McCORMACK BARON MANAGEMENT
SERVICES, INC., Appellant,

v.

AMERICAN GUARANTEE &
LIABILITY INSURANCE
COMPANY, Respondent.

No. 81181.

Supreme Court of Missouri,
En Banc.

April 27, 1999.

Jeffrey A. Cohen, Merle L. Silverstein, Mark E. Goodman, Clayton, for Appellant.

Karen L. Kendall, Peoria, IL, Steven J. Hughes, St. Louis, Robert D. Rowland, Edwardsville, IL, for Respondent.

WILLIAM RAY PRICE, Jr., Judge.

McCormack Baron Management Services sought a declaratory judgment against American Guarantee & Liability Insurance to enforce the personal injury liability provision of an insurance policy. American Guarantee filed for summary judgment, arguing that the term "offenses" as used in the policy requires that a third-party claim must state one of a specific list of causes of action to be covered by the policy. The trial court agreed and entered summary judgment in favor of American Guarantee. Because we find that the word "offenses" when used in conjunction with the words "disparages a person's ... services" does not limit coverage only to a "cause of action" or "claim" for "injurious falsehood," we reverse the judgment and remand the case.

### I.

McCormack is a Missouri corporation that manages real estate throughout the United States. Several years ago, McCormack hired Management Security, Inc. (MSI), a security guard service, for its Lexington Village housing project in Cleveland, Ohio. Enoch Bennett began working for MSI as a security guard at Lexington Village in the mid–1980s.[1] In 1993, Carl Brathwaith was hired by MSI and worked under Bennett's supervision. From November 1993 through February 1994, Bennett complained to his supervisor, both orally and in writing, that Brathwaith often came to work drunk and sometimes would not work his assigned hours. Despite Bennett's complaints, Brathwaith was not disciplined.

In early February 1994, Bennett again wrote a letter to his supervisor complaining that Brathwaith's conduct was reckless and unlawful. Bennett's supervisor showed the letter to Rosalyn Edwards, McCormack's property manager at Lexington Village. Edwards told Bennett's supervisor that the letter constituted insubordination. Bennett was fired. Bennett filed a multi-count suit in Ohio against MSI and McCormack. Bennett's complaint contains one claim against McCormack, titled "Tortious Interference with a Contractual Relationship." Bennett asserts that he was fired as a direct result of Edwards' statements to his supervisor. His complaint alleges that McCormack, through its agent Edwards, acted "willfully, maliciously, and without justification, in a conscious disregard of [Bennett's] rights...."

McCormack had purchased an insurance policy from American Guarantee in June 1993 through one of American Guarantee's St. Louis agents. The policy contains a comprehensive commercial insurance package that covers McCormack's management of Lexington Village. The policy provides, in relevant part, that American Guarantee will pay those sums that [McCormack] becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. [American Guarantee] will have the right and duty to defend any "suit" seeking those damages.

The policy, in relevant part, defines "personal injury" as an:

---

1. The facts concerning Bennett's involvement in this case are those alleged in Bennett's complaint.

... injury, other than "bodily injury", arising out of one or more of the following *offenses:*

\* \* \*

d. *Oral or written publication* of material that slanders or libels a person or organization or *disparages a person's or organization's goods, products or services;*

\* \* \*

(emphasis added).

The policy also excludes certain personal injuries from coverage. The exclusion provision relevant here is:

This insurance policy does not apply to:

a. "personal injury" or "advertising injury":

(1) arising out of oral or written publication of material, if done by or at the direction of the insured *with knowledge of its falsity.*

(emphasis added).

McCormack reported Bennett's lawsuit to American Guarantee and requested that American Guarantee provide a defense for McCormack pursuant to the personal injury liability provision in the insurance policy. American Guarantee refused to provide a defense because it claimed that the policy did not cover Bennett's suit.

On July 1, 1996, McCormack sought a judgment declaring that the policy obligates American Guarantee to provide a defense in the Bennett action and also obligates American Guarantee to indemnify McCormack against any liability arising out of that suit. McCormack filed a motion for summary judgment contending that the insurance policy covered Bennett's lawsuit. It argued that Bennett's claim arose out of an oral publication that allegedly slandered, libeled, or disparaged the services of Bennett and was, therefore, a "personal injury" claim covered by the policy. American Guarantee filed its own motion for summary judgment, stating

that it had no duty to defend or indemnify McCormack in Bennett's lawsuit. The trial court granted summary judgment in favor of American Guarantee. McCormack appealed. On appeal, McCormack renews its argument that the reference in the policy to an "[o]ral or written publication of material that ... disparages a person's or organization's goods, products or services" encompasses Bennett's claim.

## II.

At issue in this lawsuit are two separate duties, the duty to defend and the duty to indemnify. *See Robert E. Keeton and Alan I. Widiss, Insurance Law, section 9.1 (1988)* ; *1 Couch on Insurance Law, section 1:7 (3d ed.1997).* Each duty requires separate analysis. We first address American Guarantee's duty to defend McCormack in the Bennett lawsuit.

### A.

#### 1.

■ The duty to defend is broader than the duty to indemnify. *See Butters v. City of Independence,* 513 S.W.2d 418, 424 (Mo. banc 1974).[2] "To suggest that the insured must prove the insurer's obligation to pay before the insurer is required to provide a defense would make [the duty to defend] provision a hollow promise...." *13 John A. Appleman & Jean Appelman, Insurance Law and Practice, section 4684 (rev.vol.1976).* "The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependant on the probable liability to pay based on the facts ascertained through trial." *Id.* The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. *See Butters,* 513 S.W.2d 418, 424 (Mo. banc 1974); *Zipkin v. Freeman,* 436 S.W.2d 753, 754 (Mo. banc 1968). If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has

**2.** We note that an insurer's obligation to defend is also a *right* to defend. Depending upon the language of the policy, once an insurer recognizes its right and duty to defend, it usually is afforded control over the litigation to protect its financial interests. *See Keeton, section 9.*

a duty to defend. *See Butters,* 513 S.W.2d at 424; *Zipkin,* 436 S.W.2d at 754.

■ Accordingly, the specific question before us is whether a policy that insures against an "offense" of an "oral publication" that "disparages a person's ... services" provides coverage for a complaint alleging that: 1) "Ms. Rosalyn Edwards, property manager at Lexington Village and agent of [McCormack,] ... informed [Bennett's supervisor] that [Bennett's] letter constituted insubordination and asked that [Bennett] be removed from his post at Lexington Village"; 2) Bennett was fired as a result of Edwards' statements; and 3) Edwards acted "willfully, maliciously, and without justification, in a conscious disregard of [Bennett's] rights...."

2.

The interpretation of an insurance policy is a question of law. *Columbia Mutual Ins. Co. v. Schauf,* 967 S.W.2d 74, 76 (Mo. banc 1998). We do not use "technical, philosophical, or scientific meanings of the terms, nor a restricted meaning acquired in legal usage." *Appleman, section 7384.* Rather, we apply the meaning "which would be attached by an ordinary person of average understanding if purchasing insurance." *Appleman,* section 7384; *see, e.g., Shahan v. Shahan,* 988 S.W.2d 529 (Mo. banc 1999); *Farmland Indus., Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. banc 1997).

There can be no serious question raised that the statements alleged in the lawsuit disparaged Bennett's services as a security guard. "Disparage" is defined as "to lower in esteem or reputation," "to diminish the respect for," "to lower in rank by actions or words," or "to speak slightingly of." *Webster's Third New Int'l Dictionary 653 (1961)*; *see City Group, Inc. v. Ehlers,* 198 Ga.App. 709, 402 S.E.2d 787, 788 (1991). *See also Bank One, Milwaukee, NA v. Breakers Development, Inc.,* 208 Wis.2d 230, 559 N.W.2d 911 (1997)(using dictionary definition to determine plain meaning of "goods" and "products" in policy language identical to that in this case); *First State Ins. Co. v. Alpha Delta Phi Fraternity,* 39 U.S.P.Q.2d 1905 (Ill.App.1995)(using dictionary definition

to determine plain meaning of "advertising injury" in policy language identical to that in this case).

■ American Guarantee does not really contest this conclusion. Instead it argues that the term "disparages" is used in its policy in connection with the term "offenses." Thus, it argues that the policy does not cover all claims based upon disparaging comments, but instead only the cause of action of disparagement, now referred to as "injurious falsehood." *See Cuba's United Ready Mix, Inc. v. Bock Concrete Foundations,* 785 S.W.2d 649, 651 (Mo.App.1990); *Prosser and Keeton, The Law of Torts,* sec. 128, pp. 963–64 (5th ed.1984). American Guarantee continues to argue that there is no coverage here because the allegations complained of were in a count titled "Tortious Interference with a Contractual Relationship," not "injurious falsehood," and because the tort of "injurious falsehood" requires as an element that the disparaging statement be false, while the policy contains a specific exclusion for any publication made by the insured "with knowledge of its falsity." We are not persuaded by American Guarantee's argument.

■ The word "offense" cannot be read to limit coverage only to a particular "cause of action" or "claim." The word "offense" simply does not have this meaning in either common usage or legal usage. For ordinary use, the word "offense" is defined in Webster's as "something that outrages the moral or physical senses," "the act of attacking," "the act of displeasing, affronting, or angering," *or* "an infraction of law." *p. 1566.* In Black's Law Dictionary, "offense" is defined as

A felony or misdemeanor; a breach of the criminal laws; violation of law for which penalty is prescribed. The word "offense," while sometimes used in various senses, generally implies a felony or a misdemeanor infringing public as distinguished from mere private rights, and punishable under the criminal laws, though it may also include the violation of a criminal statute for which the remedy is merely a civil suit to recover the penalty. An act clearly pro-

hibited by the lawful authority of the state, providing notice through published laws. *p. 1081 (6th ed.1990).* Neither definition would support the use of the term as argued by American Guarantee to indicate that only specific formal causes of action or claims would be covered. In contrast, "cause" is defined in Webster's as "a legal process (as a suit or action in court) by which a party endeavors to obtain his claim or what he regards as his right." *p. 356.*

Neither is the term "offense" used in this way in the Missouri, Ohio,[3] or Federal[4] Rules of Civil Procedure. The rules instead use the term "claim" to describe the elements that support recovery. The Missouri rules of procedure, when referring to a lawsuit, use the terms "claim," "cause of action," and "civil action," not "offenses." *See, e.g., Rules 54, 55, 66, 67.* For example, Rule 55.03 lists items that are presented in a pleading, to include a *"claim,* defense, request, demand, objection, contention, or argument ...." (emphasis added). Additionally, Rule 55.27(a) provides that "[e]very defense, in law or fact, to a *claim* in any pleading, ... shall be asserted in the responsive pleading thereto ... except ... the following defenses may ... be made by motion: ... (6) failure to state a *claim* upon which relief can be granted." (emphasis added). Rule 54.06(c) provides that "[o]nly *causes of action* arising from acts or conduct enumerated in [Rule 54.06] may be asserted against a defendant in an action in which jurisdiction is based on [this rule]." (emphasis added). Rule 67.02(a) provides that "a *civil action* may be dismissed by the plaintiff without order of the court anytime prior to the introduction of evidence at the trial." (Emphasis added.)

Certainly, American Guarantee is free to contract with its policyholders for whatever type of insurance it wishes to provide. Coverage could be limited to specific and formal causes of action. In this particular policy,

however, we do not find that the use of the term "offense" prior to the words "disparages a person's ... services" is sufficient to create such a limited coverage that would defeat McCormack's right to a defense when sued for statements alleging "insubordination" of an employee and asking that the employer fire that employee.

■ Moreover, if we were to read "disparages" to mean knowingly issuing a false statement, as American Guarantee suggests, such restrictive reading of that term would effectively write the coverage clause out of the policy altogether. This is because the policy specifically excludes from coverage "personal injury" arising out of oral publications if done by the insured "with knowledge of its falsity." The policy's exclusion for publications issued by McCormack with knowledge of their falsity clearly illustrates that the policy's use of the term "disparages" in the provision defining coverage could not mean only acts taken with knowledge of their falsity. If "disparages" applies only to the tort of injurious falsehood, and if that tort requires knowledge of falsity as American Guarantee argues, then the policy exclusion would render the "disparages" clause superfluous. Interestingly, Bennett never alleges that any of Edwards' statements were false.

### 3.

We have discovered no prior Missouri decisions construing this disputed language. Cases from around the country are mixed. A number of other jurisdictions agree with our analysis. *See, e.g., Maine State Academy of Hair Design, Inc. v. Commercial Union Ins. Co.,* 699 A.2d 1153, 1159 (Me.1997) (finding that an allegation of verbal sexual harassment in the workplace was at least potentially covered by a policy that covered "offenses" that "disparage a person's ... services."); *Moeller v. American Guarantee*

---

**3.** Ohio's Rules of Civil Procedure use the terms "claim" and "civil action"; for example, Rule 4.3 provides that a defendant is one who has "caused an event to occur out of which the claim that is the subject of the complaint arose...." Rule 3(A) provides that a "civil action is commenced by filing a complaint with the court...."

**4.** The Federal Rules of Civil Procedure also use the terms "claim" and "civil action"; for example, Rule 8 is titled "Claims for Relief," and provides that a pleading consists of a "short and plain statement of the claim showing the pleader is entitled to relief...." Rule 3 provides that a "civil action is commenced by filing a complaint with the court."

*and Liability Ins. Co.,* 707 So.2d 1062, 1065 (Miss.1996) (noting that where the policy covered a "publication or utterance" of "defamatory or disparaging material," American Guarantee was obligated to defend a suit alleging that the insured law firm misrepresented facts designed to damage a former partner's professional reputation); *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.,* 406 Mass. 7, 545 N.E.2d 1156, 1159 (1989) (holding that the orchestra's insurance company had a duty to defend in a suit brought by Vanessa Redgrave alleging that the orchestra damaged her reputation by canceling her performances, because the policy covered injuries "arising out of . . . the publication or utterance of . . . defamatory or disparaging material.").[5]

In *Bankwest v. Fidelity & Deposit Co. of Maryland,* 63 F.3d 974, 978–80 (10th Cir. 1995), the plaintiff in the underlying action sued his bank for telling other banks that they were estopped from advancing the plaintiff money. The court held that defendant bank's insurance policy, which provided coverage for "the publication or utterance of . . . defamatory or disparaging material," required the insurer to defend the suit because the plaintiff's claim potentially constituted injurious falsehood. Although the court appears to require that a claim allege injurious falsehood in order to be covered by the policy, the court interprets "injurious falsehood" so broadly as to factually encompass claims like those brought by Bennett. *See Bankwest,* 63 F.3d at 979 (citing and discussing *Boston Symphony,* 545 N.E.2d at 1159, to support its broad reading of the policy).

In contrast, other courts have construed identical or similar policy language more narrowly. However, the facts of those cases are not remotely similar to the facts in this case. *See, e.g., Foxon Packaging Corp. v. Aetna Casualty & Surety Co.,* 905 F.Supp. 1139, 1143–44 (D.R.I.1995) (concerning a claim of intentional racial discrimination in the work-

place); *Aetna Casualty & Surety v. First Security Bank of Bozeman,* 662 F.Supp. 1126, 1131–32 (D.Mont.1987) (involving an employee's claim of emotional distress because her boss told her she was fired); *Continental Cas. Co. v. Alexis I. DuPont School Dist.,* 317 A.2d 101, 105 (Del.1974) (involving an action brought by an employee alleging that his firing resulted in damage to his reputation). The plaintiffs in these cases do not allege, as Bennett does, that a publication or utterance of defamatory material to a third party caused them to lose their jobs.

We find only one case directly contrary to our decision today. In *Select Designs, Ltd. v. Union Mut. Fire Ins. Co.,* 165 Vt. 69, 674 A.2d 798, 804 (1996), the plaintiff in the underlying action was RMH, a competitor of Select Designs. RMH alleged that Select Designs' sales manager tried to lure RMH customers by unfavorably comparing RMH's products to Select Design's. The court found the claim was not covered by the insurance policy because "[d]isparagement in this context does not simply mean comparing a competitor's product or service unfavorably with one's own, but must constitute 'injurious falsehood' to be actionable."

**B.**

The duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement. *See Bankwest,* 63 F.3d at 978. "The insurer's duty to pay arises only after the suit by the third party is successful and the insurer becomes obligated to pay the resulting judgment." *Appelman, section 4684.* The facts before the Court, at this time, consist solely of Bennett's complaint. We cannot know what facts will be established at trial or whether those facts will fall within the coverage of the policy or trigger any policy exclusions. McCormack's

---

**5.** Additional cases from other jurisdictions generally support a broad interpretation of the term "offenses" in policies like the one involved here. *See, e.g., Kitsap County v. Allstate Insurance Company, et. al,* 136 Wash.2d 567, 964 P.2d 1173, 1181 (1998) (finding that the term "offenses" encompasses intentional and unintentional torts);

*Tinseltown Video, Inc. v. Transportation Insurance Co.,* 61 Cal.App.4th 184, 71 Cal.Rptr.2d 371, 377 (1998) ("To the extent the listed offenses are framed in generic terms, they should be construed broadly to encompass all specific torts which reasonably could fall within the general category.").

claim for indemnity is not ripe for ruling at this time.

## III.

We find that American Guarantee is obligated to defend McCormack in Bennett's action. The claim for indemnity is not ripe. The judgment is reversed and the case is remanded.

All concur.