**AMERICAN STATES INSURANCE COMPANY, Appellant,**

v.

**HERMAN C. KEMPKER CONSTRUCTION COMPANY, INC.; GSDS, LLC., Respondents.**

**No. WD 59721.**

Missouri Court of Appeals,
Western District.

March 26, 2002.

Dana L. Frese, Jefferson City, MO, for appellant.

Brian K. Francka, Jefferson City, MO, for respondent Herman C. Kempker Const.

Scott R. Pool, Jefferson City, MO, for respondent GSDS.

Before NEWTON, P.J., LOWENSTEIN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

The principal questions in this appeal are whether a commercial general liability insurance policy creates a duty to defend and covers a claim for a negligent misrepresentation made by the insured. In the underlying action, a real estate developer, GSDS, LLC (hereafter GSDS), filed a seven-count petition against the other respondent, Herman C. Kempker Construction Company (hereafter Kempker or the insured) seeking damages arising from Kempker's conduct (making false representations about construction to GSDS) during the construction of a duplex development called the Streumph Court. American States Insurance Company (hereafter American States), the appellant, is the issuer of the commercial general liability policy. This appeal is from a declaratory judgment action brought by American States against its insured to determine whether American States had a duty to defend and indemnify Kempker in the GSDS suit. The trial court sustained Kempker's motion for judgment on the pleadings.

**Factual and Procedural History**

GSDS purchased more than three acres of undeveloped real estate in Jefferson City, Cole County, now known as the Struemph Court. GSDS sought to develop this property by contracting for construction of six duplexes and a street that would connect to a public road. After an open bidding, GSDS elected to contract with Kempker based on Kempker's estimated price and based on its experience in developing subdivisions and constructing homes and duplexes in Cole County.

GSDS and Kempker entered into a series of contracts for the construction of individual duplexes, which was to take place in three phases. The first two phases involved the building and construction of duplexes, a road, and the requisite utilities. The third phase is the subject matter of the underlying lawsuit. In its petition, among other things, GSDS alleged that prior to agreeing to proceed with the third phase,[1] Kempker made negligent misrepresentations concerning the final part of the development, specifically that the City of Jefferson would not "take over" Streumph Court because of the street width and building setbacks, that an engineer was not needed to design the street, that a cul-de-sac was required at the end of Streumph Court, that Kempker could design and construct the bottom three duplexes in a manner that would not make the street too steep, et cetera. GSDS further alleged that as a result of these negligent misrepresentations, Jefferson City took over the street; however, the street was not constructed in a manner that met the appropriate standards. These alleged negligent misrepresentations apparently lowered the fair market value of GSDS's property, forced GSDS to spend additional money to redesign the street, the storm-water collection and transportation system, and resulted in other damages relating to lost profits and loss

1. There is some dispute as to whether the representations were made prior to the commencement of the third phase or whether the representations were made through the duration of the project.

of use of property.[2]

Kempker tendered the defense of the lawsuit to its insurer, American States, and sought indemnity with respect to the claims in GSDS's lawsuit. American States provided Kempker with a defense, but under a reservation of rights to deny liability insurance coverage. American States subsequently filed a petition seeking a declaratory judgment that it was not obligated to provide a legal defense or indemnity for Kempker in the underlying GSDS suit. American States then filed for and was granted a partial summary judgment finding American States had no legal obligation as to all but the negligent misrepresentation claim in the underlying suit. Kempker then filed for and was granted a judgment on the pleadings finding that American States is legally obligated to defend Kempker and that American States is legally obligated to indemnify Kempker in the event of a judgment against Kempker as to the only remaining count, negligent misrepresentation. This appeal involves only the judgment on the pleadings concluding that American States is legally obligated to *defend* Kempker and that American States is legally obligated to *indemnify* Kempker in the event of a judgment against Kempker as to the only remaining claim, negligent misrepresentation.

### Standard of Review

On appeal from the grant of a motion for judgment on the pleadings, the reviewing court reviews the allegations of the non-movant's petition to determine whether the pleaded facts are insufficient as a matter of law. "The party moving for judgment on the pleadings admits, for purposes of the motion, the truth of all well pleaded facts in the opposing party's pleadings." *State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 134 (Mo. banc 2000) (citation omitted). "The position of a party moving for judgment on the pleadings is similar to that of a movant on a motion to dismiss, i.e., assuming the facts pleaded by the opposite party to be true, these facts are nevertheless insufficient as a matter of law." *Id.* Judgment on the pleadings is proper where, from the face of the pleadings, the moving party is entitled to a judgment as a matter of law. *Id.*

### Analysis

American States argues in its first point that the trial court erred because the facts giving rise to negligent misrepresentation do not support holding the insurance company liable under the coverage portion of the policy. In its second point, American States argues that the trial court erred because the facts giving rise to negligent misrepresentation do not support holding the insurance company liable under the exclusions portion of the policy.

■ In Missouri, the burden of showing that the loss and damages are covered under the insurance policy is placed on the plaintiff; the burden of showing that there is an applicable exclusion is on the defendant insurer. *Am. States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo.App. 1998).

---

2. Some of the language of the insurance policy reads as follows:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" and "property damage" to which this insurance does not apply. . . .

Because the issues in this case are whether American States has a duty to defend and then indemnify its insured, the court first notes that the duty to defend is broader than the duty to indemnify.[3] *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999) (citation omitted). "The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependant on the probable liability to pay based on the facts ascertained through trial." *Id.* "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *Id.* "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* at 170–71. Where there is no duty to defend, there is no duty to indemnify. *Superior Equip. Co. v. Md. Cas. Co.*, 986 S.W.2d 477, 484 (Mo.App. 1998).

### I. Duty to Defend

In its first point, American States argues that the trial court erred in sustaining Kempker's motion for judgment on the pleadings because there was no liability insurance coverage for a negligent misrepresentation claim available under the policy between American States and Kempker. Specifically, American States argues that there is no liability coverage because: A) there was no "occurrence" under the policy, as "occurrence" is defined in the policy; and B) the damages do not constitute "property damage" as defined in the policy.

### A. "Occurrence"

"Occurrence" as defined in the policy means "an accident, including continu-

ous or repeated exposure to substantially the same general harmful conditions." The question, then, is whether a claim for negligent misrepresentation can be an occurrence under the policy. In arguing that there was no occurrence and thus no coverage, American States relies primarily on two opinions, *Hawkeye–Security Insurance Co. v. Davis*, 6 S.W.3d 419 (Mo.App. 1999) and *Mathis*, 974 S.W.2d 647.

In *Hawkeye–Security*, an insurance company defended an action where, in the underlying suit, the contractor allegedly breached his contract and breached express and implied warranties by failing to perform in a workmanlike manner in constructing a home for plaintiffs. 6 S.W.3d at 421. The issue there was whether the breach of contract or warranty constituted an "occurrence" or "property damage" such that the commercial general liability policy covered the damage. *Id.* at 425. The Southern District held that the loss stemmed from breach of contract or warranty, which is not an "occurrence" or "property damage" and thus the policy contained no coverage. *Id.* at 426. In so holding, the court noted:

> [The contractor] had sufficient control and management to enable him to fulfill his contractual obligations and build the house for Appellants as warranted. [The contractor's] failure to perform cannot be characterized as 'an undesigned or unexpected event.' Consequently, Appellants cannot show that there was an 'occurrence' within the meaning of the policy.

*Id.*

In *Mathis*, the issue involved the determination of whether facts giving rise to claims of negligence, negligent misrepre-

---

**3.** Though all of the parties cited this rule, at times they mistakenly have treated the duty to defend and the duty to indemnify as one legal principle.

sentation and breach of contract were an "occurrence" as defined in the policy. 974 S.W.2d at 648. The contractor there fired and then sued a subcontractor for constructing trenches in the wrong grade and slope and for failing to install rebar. *Id.* American States was the subcontractor's insurance company, again by way of a commercial general liability policy. *Id.* The Eastern District noted that the intent of these policies is to "protect against unpredictable and potentially unlimited liability that can result from accidentally causing injury to other persons or their property." *Id.* at 649. The court also noted that such a policy "does not serve as a performance bond, nor does it serve as a warranty of goods or services." *Id.* Thus, the court held that breaches of contract are not "occurrences" and that the insurance company had no liability. Though one of the counts against the subcontractor was negligent misrepresentation, the *Mathis* court decided the case solely on contract principles:

> [B]reaches of contract are not "accidents" or "occurrences".... The cause of [the plaintiff's] loss was [the subcontractors'] failure to construct the ducts according to contract specifications. Such a breach of a defined contractual duty cannot fall within the term "accident." Performance of its contract according to the terms specified therein was within [the subcontractors'] control and management and its failure to perform cannot be described as an undesigned or unexpected event.

*Id.* at 650.

Respondents Kempker and GSDS rely primarily on one opinion, *Wood v. Safeco Insurance Co. of America,* 980 S.W.2d 43 (Mo.App.1998), involving a personal umbrella policy. The insured in that case sold real estate to the buyer. When the property flooded, the buyer sued the in-sured for negligent and intentional misrepresentation. *Id.* at 45. This suit was dismissed without prejudice, re-filed, and then dismissed again, this time with prejudice. *Id.* Because the insured's insurance company refused to defend the insured against either lawsuit based on the personal umbrella policy, the insured sued for damages seeking indemnification, attorneys fees and vexatious refusal to defend. *Id.* On appeal, the issue boiled down to whether a negligent misrepresentation claim was an "occurrence" such that the insurance company should have defended the suit. *Id.* at 47. After extensive research, the Eastern District held that negligent misrepresentation was potentially covered, stressing that a negligent misrepresentation could be an accident. *Id.* at 52–53. Though the claim of negligent supervision includes the element of intent, " 'the falsity in the statement and the resulting injury or damage may be accidental' and the claim should be treated 'like other forms of negligence.' " *Id.* at 52 (quoting *Sheets v. Brethren Mut. Ins. Co.,* 342 Md. 634, 679 A.2d 540, 551 (1996)).

Without citing any authority, the appellant argues that *Wood* should be distinguished because the insurance policy in that case was an umbrella policy, instead of a general commercial liability policy. However, because the policy definition of "occurrence" in the case at hand was the identical to the definition in the *Wood* policy and because the issue at this point involves only the duty to defend (broadly construed to include even a complaint that merely alleges facts that giving rise to a claim potentially within the policy's coverage, as noted *supra*), this court sees no compelling reason to distinguish the potential for coverage based on the type of policy.

### B. "Property Damage"

█ American States argues next that the policy does not cover negligent misrep-

resentation because the damage does not constitute "property damage." As defined in the policy, "property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The appellant cites *Hawkeye–Security* in arguing that there is no duty to defend because there was no "property damage." 6 S.W.3d at 426. In *Hawkeye–Security,* the court had before it evidence of when the property damage occurred and could ascertain that no "property damage" occurred under one portion of the policy and that an exclusion applied under another portion of the policy. No corresponding evidence yet exists in the instant case because none of the issues in the underlying petition have been subject to discovery. Moreover, comparing the facts alleged in the petition with the language of policy, the claim of negligent misrepresentation and its accompanying damages are potentially covered by the policy. The complaint states that as a result of the negligent misrepresentation, GSDS was damaged by a decrease in the fair market value of its property, by being forced to spend additional money redesigning and repairing property, by lost profits and loss of use, including lost rents, lease terminations and accommodations for tenants during construction repairs. Because the complaint alleges facts that give rise to a claim potentially within the policy's coverage (physical injury to tangible property, including all resulting loss of use of that property OR

loss of use of tangible property that is not physically injured) and because factual disputes continue to linger, it would be premature to hold that the appellant has no duty to defend.

This point is denied.

## II. Exclusions and the Duty to Indemnify

█ In its second point, American States argues that the trial court erred because there is no liability insurance coverage because of four exclusions in the policy. The appellant argues that first two exclusions apply "if it is determined that the damages arose prior to the project" and that the third exclusion applies "if the Court [presumably this court] believes such damages were sustained after completion of the project."

These assertions and other similar statements in the three parties' briefs demonstrate that the facts pertaining to the applicable exclusion (if there is one) must be determined by a fact finder. The standard of review for a motion for judgment on the pleadings, as set forth *supra,* instructs that the party moving for judgment on the pleadings admits, for purposes of the motion, the truth of all well-pleaded facts in the opposing party's pleadings. The court does not have before it Kempker's answer to the underlying petition.

Whether any exclusion applies is difficult to ascertain. The parties have a material disagreement about whether the damages were incurred *after* the project was completed, the timing of which arguably could trigger any of several exclusions. This court simply is without sufficient information to find that no exclusion applies as a matter of law. Similarly, the court is without sufficient information to conclude as a matter of law that any of the proffered exclusions apply. The judgment, to the extent it concludes that no

exclusion applies as a matter of law, is reversed.

■ The court reiterates that the duty to defend is broader than the duty to indemnify. *McCormack,* 989 S.W.2d at 170. "[W]here the controlling facts are unknown and the duty to defend arises out of potential coverage, resolution of the duty to indemnify must await the facts." *Superior,* 986 S.W.2d at 484. "An insurer has a duty to defend claims falling within the ambit of the policy even if it may not ultimately be obligated to indemnify the insured." *Id.* at 484–85.

In this case, the court has before it only the original petition. It is possible that facts at trial could establish that the incident giving rise to the negligent misrepresentation claim will trigger a policy exclusion or otherwise reveal that the policy does not cover underlying action. *See McCormack,* 989 S.W.2d at 170. In short, the facts here are insufficient to sustain a judgment on the pleadings.

Because the claims potentially are covered by the policy and because at this point the pleadings do not establish that no exclusion applies as a matter of law, the portion of the judgment finding a duty to defend is affirmed. The portion of the judgment requiring indemnity is reversed and remanded.

All concur.