**PENN–AMERICA INSURANCE COMPANY, Appellant,**

v.

**THE BAR, INC. d/b/a Funkytown, et al.; Ronnie Banister, Respondents.**

**No. WD 65697.**

Missouri Court of Appeals, Western District.

Sept. 19, 2006.

Michael D. Hufft, Kansas City, for Appellant.

Randall D. Crawford, Kansas City, for The Bar, Inc.

Jeannemarie C. McNabney, Liberty, for Ronnie Banister.

Before HOLLIGER, P.J., LOWENSTEIN and ULRICH, JJ.

HAROLD L. LOWENSTEIN, Judge.

Appellant, Penn–America Insurance Company ("Penn–America"), sought a declaratory judgment that it had no duty to defend or indemnify its insured, respondent, The Bar, Inc., known as Funkytown ("Funkytown"), in an underlying lawsuit brought by another respondent, Ronnie Banister ("Banister"), for damages arising from his forcible removal from the premises by the Funkytown bouncer. Penn–America moved for summary judgment on the grounds that the contract of insurance did not provide coverage for the claims alleged, nor provide a duty to defend or indemnify in the underlying lawsuit. The trial court granted what was denominated as a partial summary judgment in favor of Penn–America. Penn–America appeals from a part of the judgment, which determined there was coverage in a portion of one of the counts in Banister's underlying petition for damages against Funkytown.

FACTUAL AND PROCEDURAL HISTORY

When reviewing an appeal from a summary judgment, an appellate court reviews

the record "in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." Id. The non-movant is accorded "the benefit of all reasonable inferences from the record." *Id.*

The pleadings and other documents before the court reveal the following: The Bar, Inc., a Missouri corporation, owned and operated Funkytown, a bar and tavern located at 8300 East Blue Parkway, Kansas City. Penn–America entered into a contract of insurance bearing policy number PAC 6159156 with Funkytown, evidenced by a renewal certificate dated August 20, 2002, for the renewal period from July 7, 2002, to July 7, 2003 (the "Policy"). The Commercial General Liability Coverage Form of the Policy provides that:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

. . . .

2. Exclusions

This insurance does not apply to:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

The Assault and Battery Exclusion of the Policy provides:

In consideration of the premium charged it is hereby understood and agreed that this policy will not provide coverage, meaning indemnification or defense costs for damages alleged or claimed for

"Bodily Injury", "Property Damage", Personal Injury, Advertising Injury, Medical Payments or any other damages resulting from assault and battery or physical altercations that occur in, on, near or away from the insured's premises,

1) Whether or not caused by, at the instigation of, or with the direct or indirect involvement of the insured, the insured's employees, patrons or other persons in, on, near or away from the insured's premises, or

2) Whether or not caused by or arising out of the insured's failure to properly supervise or keep the insured's premises in a safe condition, or

3) Whether or not caused by or arising out of any insured's act or omission in connection with the prevention or suppression of the assault and battery or physical altercation, including, but not limited to, negligent hiring, training and/or supervision

Finally, under the Combined Provisions Endorsement to the Policy, the Punitive Damages exclusion provides: "It is part of the conditions of this policy that the Company shall not be liable for any damages awarded against an insured as punitive or exemplary damages."

Based on his petition, and Banister's subsequent deposition, the facts are as follows:

On November 15, 2002, Banister entered Funkytown around 8:00 pm to attend a gathering of ten for his father-in-law's birthday. While at the table, Banister looked up to a balcony, and saw his wife expose her bare breasts. Banister next saw his wife follow the bouncer toward the exit. Banister followed them and, when the bouncer came back in, Banister asked him, "What's with her?" The bouncer replied that she was "out of here." The bouncer asked if Banister was with her and when he replied that she was his wife, the bouncer said, "You're out of here, too." Banister said, "Oh, man, that's [ ]ucked up," and turned to get his belongings. The bouncer said, "That's [ ]ucked up, huh?" and grabbed Banister and threw him on a table, then picked him up and threw him against a pole with his hand around Banister's neck. Banister said he could not breathe. The bouncer said, "Good," and again hit Banister's head against the pole and then threw Banister outside. Banister was taken by ambulance to the hospital. He suffered a fractured skull, two black eyes, a cut to his head, a concussion, a cut over one eye requiring stitches, numerous contusions, paranoia and post-traumatic stress disorder, all of which have resulted in headaches, memory loss, coordination problems, and spinal fluid leaking from his nose for two weeks after the incident.

In a Second Amended Petition for Damages (the underlying lawsuit), Banister alleged battery in Count I; intentional infliction of emotional distress in Count II; negligent hiring and supervision in Count III; and negligence (in the alternative) in Count IV. In his deposition, Banister agreed that his injuries came from the physical altercation he had with the bouncer. The claim at issue here charges in Count IV that Funkytown, through its employee, "had multiple non-violent options when escorting [Banister] from the premises and failed to correctly exercise the appropriate option." The Appendix to this opinion sets out the entirety of Count IV, which was added.

Penn–America filed this Complaint for Declaratory Judgment and Other Relief seeking a declaration that it had no duty under the Policy to defend or indemnify Funkytown in the underlying lawsuit by Banister. Penn–America moved for summary judgment on the grounds that the Policy did not provide coverage for the claims alleged, nor did it provide a duty to defend or indemnify in the underlying lawsuit. The trial court granted summary judgment in favor of Penn–America on Counts I, II, and III, and a portion of Count IV (the "supervising and hiring" language found in paragraph 6a) of the Second Amended Petition finding that the policy and endorsements lawfully exclude coverage for assault and battery as well as negligent hiring and supervision. Neither Funkytown nor Banister appealed this portion of the judgment. Funkytown has not filed a brief in this case. However, the court denied Penn–America relief on the remainder of Count IV, specifically, inadequately exercising security services on the premises, excessively and improperly restraining Banister in an effort to remove him from the premises, and improperly restraining Banister's balance and mobility while escorting him from the premises); and ordered that Penn–America must defend the remaining claims of negligence in Count IV and indemnify Funkytown for any judgment entered or settlement reached with regard to those remaining claims of negligence in Count IV.

In sum, the court must decide whether the policy excludes the added alternate count of negligence against Funkytown.

### JURISDICTION

Although neither party has questioned appellate jurisdiction, because the trial court denominated its ruling an "Order and Judgment Granting *Partial* Summary Judgment in Favor of Plaintiff and Declaring Rights and Obligations of the Parties" (emphasis added), and because a partial summary judgment is not a final judgment subject to our review, *Kesterson v. Wallut*, 116 S.W.3d 590, 598 (Mo.App.2003), this court must determine its jurisdiction *sua sponte. Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). In addition, the trial court did not certify its judgment for appeal under Rule 74.01(b). A party may only appeal from a final judgment—one that disposes of all claims in the case and leaves nothing for further determination. Id. "An appealable judgment resolves all issues in a case, leaving nothing for future determination.... It is the content, substance, and effect of the order that determines finality and appealability." *Id.* "The required 'judicial unit for an appeal' has a settled meaning: 'the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim.'" *Id.* (citations omitted). Although entitled "Partial" summary judgment, the trial court's order and judgment resolved all of the issues presented to it and declared the rights and obligations of the parties. Therefore, the court will treat the judgment as final for the purposes of appeal.

### POINTS ON APPEAL

Penn–America raises three points on appeal.

● First, it contends that the trial court erred in entering summary judgment against it with respect to its duty to indemnify Funkytown for any judgment or settlement reached with regard to the remaining claims of negligence in Court IV of the second amended petition for damages because the Policy excluded coverage for bodily injury resulting from assault and battery or physical altercations in, on, near, or away from the insured's premises, and Banister's bodily injury resulted from such assault and battery or physical altercation.

● Second, it asserts that the trial court erred in entering summary judgment against it with respect to its duty to defend Funkytown with regard to the remaining claims of negligence in Court IV of the second amended petition for damages because it had no duty to defend in that the Policy excluded coverage for bodily injury resulting from assault and battery or physical altercations in, on, near, or away from the insured's premises, and Banister's bodily injury resulted from such assault and battery or physical altercation.

● Third, it claims that the trial court erred in denying its motion for summary judgment with respect to its duty to defend and duty to indemnify Funkytown with regard to the remaining claims of negligence in Count IV of Banister's second amended petition for damages because it had no duty to defend or indemnify because the policy excluded coverage for bodily injury resulting from assault and battery or physical altercations in, on, near, or away from the insured's premises, and Banister's bodily injury resulted from such assault and battery or physical altercation.

### STANDARD OF REVIEW

This court's review of the trial court's grant of summary judgment is essentially *de novo. ITT*, 854 S.W.2d at 376. The propriety of summary judgment is purely an issue of law, and the appellate court need not defer to the trial court's order granting summary judgment. *Id.*

The criteria on appeal for testing the propriety of summary judgment is whether the movant has established that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 377; Rule 74.04. "Where the underlying facts are not in question, a dispute arising from the interpretation and application of an insurance contract is a matter of law for the court." *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 342 (Mo.App.2000). Since insurance policies are contracts, the rules of contract construction apply. *Capitol Indem. Corp. v. Callis*, 963 S.W.2d 247, 249 (Mo.App. 1997). "The words used in insurance policies are given their ordinary, every day meaning unless it is evident that a technical meaning should apply. Unless the insurance policy is ambiguous, it must be enforced as written." *Id.* (citations omitted).

■■■■ "The denial of a motion for summary judgment is not a final judgment and is, therefore, not an appealable order. This is true even when the appeal is taken from the final judgment in the case." *Sanders v. Ins. Co. of N. Am.*, 42 S.W.3d 1, 8 (Mo.App.2000) (citations omitted). In Point III, Penn–America raises an issue related to the denial of a portion of its summary judgment motion. However, we will not address that argument here because denial of a summary judgment motion does not constitute a final judgment, is not appealable, and will only be reviewed when its merits are completely intertwined with a grant of summary judgment in favor of an opposing party. *Transatlantic Ltd. v. Salva*, 71 S.W.3d 670, 675–76 (Mo. App.2002). Point III will be dismissed.

## ANALYSIS

The issues on appeal focus on the interpretation of the language of the assault and battery exclusion contained in Penn–America's Policy. Penn–America contends that the Policy excludes all actions arising out of an assault or battery or physical altercation, including any negligence claim; thus, by virtue of the exclusions, Penn–America asserts that it is not obligated to defend or indemnify Funkytown in the underlying lawsuit brought by Banister. Banister contends on appeal that the Policy does not exclude coverage for negligence. (Co-respondent Funkytown did not file an appellate brief.)

■■■■ Penn–America asserts that the trial court erred in entering summary judgment against it with respect to its duty to defend the remaining claims of negligence in Count IV of Banister's second amended petition. "The duty to defend is broader than the duty to indemnify." *McCormack Baron Mgm't Servs., Inc. v. Am. Guarantee & Liability Ins. Co.*, 989 S.W.2d 168, 170 (Mo. *banc* 1999). "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." Id. The court must ascertain whether the alleged negligent conduct in Count IV—that Funkytown, "through its employee-agent, had multiple non-violent options when escorting Plaintiff from the premises and failed to correctly exercise the appropriate option"—raises a claim against Funkytown "potentially" or "possibly" within the scope of coverage under the policy. *Id.*

This court has consistently held that negligence actions arising out of an assault and/or battery fall within the exclusionary language and are not covered under the policy. *Callis*, 963 S.W.2d at 249; *Acceptance Ins. Co. v. Winning Concepts of Westport, Inc.*, 842 S.W.2d 206, 208 (Mo. App.1992).

In *Winning Concepts,* the insurer sought a declaration that its policy did not cover a patron's claims for assault and battery and for negligent hiring and reten-

tion against its insured when the insured restaurant's employees allegedly assaulted and battered the patron. 842 S.W.2d at 207. As to the issue of coverage for the negligence claim, the insured took the position that because the claim was for negligence, the assault and battery exclusion was not applicable. The insured appealed from the trial court's judgment that there was no coverage. *Id.* This court examined the clear language of the policy, which provided that there is no coverage for injury "arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts." Id. at 208. The court affirmed the judgment of the trial court, holding that:

> Negligently hiring persons with violent propensities which negligence results in an individual being assaulted and battered is an act or omission in connection with the prevention or suppression of assault and battery and therefore is excluded under the terms of the policy. The act or omission consists of the failure to prevent or suppress assault and/or battery by not taking adequate precautions in hiring persons to assure that they would not be likely to commit an assault and/or battery.

*Id.*

In *Callis*, the insurer sought a declaratory judgment that it had no duty to defend or indemnify its insured, doing business as a lounge, in the underlying lawsuit brought by a patron of the lounge as a result of an assault and battery against the patron by the insured's employee. 963 S.W.2d at 248. The patron alleged assault and battery, a *respondeat superior* claim, and negligence in failing to protect a patron from the assault and battery by an employee of the business. The trial court granted the insured's motion for summary judgment and denied the insurer's motion

for summary judgment on its petition for declaratory judgment. The trial court held that the insurance policy did not exclude the negligence action and that the policy covered the insured in the underlying lawsuit. *Id.* The insurer appealed, and this court found that the negligence claims in patron's petition were premised on the alleged assault and battery; thus, the assault and battery exclusion included negligence actions arising out of the assault and battery. Id. at 250. This court held that because there was no coverage, the insurer did not have a duty to defend and that granting summary judgment to the insured was error. Id. at 251.

■■■ The clear language of the Policy precludes coverage for injuries:

> resulting from assault and battery or physical altercations that occur in, on, near or away from the insured's premises, … Whether or not caused by … the insured's employees … Whether or not caused by or arising out of any insured's act or omission in connection with the prevention or suppression of the assault and battery or physical altercation, including, but not limited to, negligent hiring, training and/or supervision.

The unambiguous language of the assault and battery exclusion precludes coverage for Banister's claims of battery (Count I), intentional infliction of emotional distress caused by the battery (Count II), and negligent hiring and supervision of the bouncer (Count III). As to Banister's Count IV, the alleged failure of Funkytown's bouncer to exercise non-violent means to eject Banister from the premises is an act or omission in connection with the prevention or suppression of the assault and battery or physical altercation. Since the exclusion bars coverage of both the actual assault and battery or physical altercation and the negligence, which allegedly caused the as-

sault and battery or physical altercation, Penn–America does not have a duty to defend the underlying lawsuit. Penn–America's Point II on appeal is granted.

The Supreme Court of Missouri has held that:

> The duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment ... The insurer's duty to pay arises arises only after the suit by the third party is successful and the insurer becomes obligated to pay the resulting judgment.

*McCormack Baron,* 989 S.W.2d at 173 (internal quotation marks and citations omitted). Because the court determines that there is no duty to defend, it follows that there is no duty to indemnify. *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.,* 71 S.W.3d 232, 236 (Mo.App.2002). "This court has previously held that an assault and battery exclusion preclude[s] a duty to defend and indemnify." *Callis,* 963 S.W.2d at 251 (citing *Winning Concepts,* 842 S.W.2d at 206). Penn–America's Point I on appeal is granted.

Therefore, the court reverses the judgment as it pertains to all but paragraph 6(a) of Count IV of the underlying lawsuit, and the cause is remanded.

All concur.

### APPENDIX

Count IV of the Second Amended Petition for Damages in the underlying suit is recounted below. Count IV to the underlying petition is at the heart of the summary judgment reviewed here on appeal. This count was added to the three counts that were also contained in the original petition and the amended petition. The first three counts were for battery, intentional infliction of emotional distress and negligent hiring/supervision in which the bouncer's actions were described as being, "intentionally," "willfully," and "purposefully."

The judgment under review declares that appellant has a duty to defend and indemnify on all portions of this count except for 6(a).

The legal file supplied here did not contain the page in the trial court's file which contained paragraphs 3 through 7 of Count IV. It was obtained pursuant to Rule 81.12(f).

### COUNT IV NEGLIGENCE (IN THE ALTERNATIVE)

1. Plaintiff incorporates by reference all allegations contained in this petition.

2. Defendant, through its employee-agent, had multiple non-violent options when escorting Plaintiff from the premises and failed to correctly exercise the appropriate option.

3. Defendant, through its employee-agent, improperly restrained Plaintiff by knocking Plaintiff to the ground and improperly restrained Plaintiff by grabbing Plaintiff's throat that prevented Plaintiff from breathing.

4. Defendant, through its employee-agent, improperly escorted Plaintiff from the premises causing Plaintiff to fall to the ground.

5. Defendant, in restraining and escorting plaintiff from the premises, had a duty to exercise due care and concern for Plaintiff's safety.

6. Defendant breached that duty in the following ways:
   a. Inadequately training, supervising, and hiring security personal; [sic]
   b. Inadequately exercising security services on the premises;

c. Excessively and improperly restraining Plaintiff in effort to remove the Plaintiff from the premises;

d. Improperly restraining Plaintiff's balance and mobility while escorting Plaintiff from the premises;

e. Any and all other forms of negligence that may be discovered.

7. As a direct and proximate cause of Defendant's negligence, Plaintiff suffered damages as described above.