STATE OF MISSOURI EX REL. INTER-STATE OIL COMPANY, Relator, v. EWING C. BLAND, NICK T. CAVE, and SAMUEL T. DEW, as judges of the Kansas City Court of Appeals.—No. 39360.—190 S. W. (2d) 227.

Court en Banc, September 4, 1945.

Rehearing Denied, November 5, 1945.

*Charles M. Miller* for relator.

*Julian E. Smith, Watson, Ess, Groner, Barnett & Whittaker,* and
*Douglas Stripp* for respondents.

LEEDY, J.—This proceeding in certiorari was instituted, and the writ issued prior to the adoption of the new constitution. By it, relator sought to quash, for conflict, the opinion of the Kansas City Court of Appeals in Inter-State Oil Co., respondent v. Equity Mutual Insurance Co., appellant, 183 S. W. 328. Our writ issued February 6, 1945, and the cause was docketed and submitted at the following May term. The points relied on in relator's brief are confined to alleged conflicts with controlling Supreme Court decisions, but in its reply brief, relator, for the first time, invoked the provisions of Sec. 10, Art. V, of the new constitution,[1] and asked that the cause be determined as on original appeal.

[1]"The Supreme Court may finally determine all causes coming to it from any Court of Appeals, whether by certification, transfer or certiorari, the same as on original appeal." [Sec. 10, Art. V, Constitution of Missouri, adopted February 27, 1945.]

The challenged opinion was rendered in an action brought in the Circuit Court of Jackson County by relator, Inter-State Oil Co., as plaintiff, against Equity Mutual Insurance Co., as defendant, to recover certain expenses (consisting of a $1,500.00 attorney's fee and $16.50 for depositions), incurred by Inter-State in the successful defense of a damage suit brought against it by a former employee, one Potter, for personal injuries alleged to have been sustained by him through the negligence of Inter-State. Equity's liability for said expenses is predicated upon its policy of insurance issued to Inter-State known as a "Standard Workmen's Compensation and Employer's Liability Policy." It defended on the ground that Potter's injuries constituted ▪▪▪ an occupational disease for which no insurance was provided by said policy because the same contained an endorsement excluding occupational diseases from the coverage. The jury returned the verdict in favor of Equity, which the trial court set aside, and ordered a new trial on the ground that the verdict was against the weight of the evidence, and Equity appealed.

The following are the relevant provisions of the policy in question:

"Equity Mutual Insurance Company . . . does hereby agree with this employer, . . . as respects personal injuries sustained by employees, . . . as follows:

"Compensation 1 (a) To Pay Promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due: . . .

"Liability 1 (b) To Indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada. . . .

"Defense 3. To Defend, in the name and on behalf of this Employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent. . . .

"Costs and Expenses 4. To Pay all costs taxed against this Employer in any legal proceeding defended by the Company. . . ."

Attached to and forming a part of said policy was the following exclusion endorsement: "It is agreed that the Policy of which this endorsement forms a part does not afford insurance under Paragraph One (b) with respect to occupational disease."

The petition in the employe's suit against Inter-State is set out in the opinion, to which reference is made for the allegations thereof, as well as for other facts not herein stated.

The opinion properly recognized the rule that unless a verdict for plaintiff therein could. never be allowed to stand, the order granting a new trial (for the reason stated) would not be disturbed. It then determined from Potter's petition that his action was based on the theory that dermatitis (with which he was suffering, and for which he sought recovery) is an occupational disease, and held that what the evidence may have shown with respect to whether dermatitis is an occupational disease was immaterial, and further held that Equity's obligation to defend the suit "is to be determined from the cause of action pleaded at the time the action is commenced, not from what an investigation or a trial of the case may show the true facts to be." It, accordingly, reversed the order granting a new trial, and ordered that judgment for Equity be entered on the verdict, thus finally disposing of the case.

At the time said opinion was adopted, there was no opinion of this court with which the holding, supra, conflicted. But it was subsequently held by Division I of this court in Marshall's U. S. Auto Supply, Inc., v. Maryland Casualty Co., No. 39,170, 354 Mo. 455, 189 S. W. (2d) 529 (decided June 4, 1945, after the submission herein, and in which the motion for rehearing has this day been overruled) that the actual facts (known to the insurance company, or which could be known from a reasonable investigation), and not the condition of the pleadings control in determining the duty of an insurance company to defend under a like policy. It was there contended that the question of whether the employe's suit was for an occupational disease was to be determined from the allegations of his petition. In ruling that question adversely to the defendant therein, and contrary to the holding of the Court of Appeals in this case, it was said: "We do not think that an insurance company can ignore actual facts (known to it or which could be known from a reasonable investigation) in determining its liability to defend. . . . (We mean by actual facts the facts which were known, or should have been reasonably apparent at the commencement of the suit and not proof made therein or the final result reached.)"

Thus we are confronted with this peculiar situation: The opinion under attack finally determines the case by the application of what we have since held to be an improper rule, but which was not, when rendered, in conflict with any controlling decision of this court. If the opinion becomes final, the case will have been terminated, ▮ and plaintiff deprived of the new trial which was awarded by the trial court when, for the reasons hereinafter noticed, it does not affirmatively appear that a verdict for plaintiff could never be allowed to stand. It may be conceded that relator's request that we

determine the case as an original appeal was not seasonably made. However, we think the situation so unusual, and the consequences so harsh, and having before us the record and briefs in the Court of Appeals, we are constrained to broaden the scope of the present review as authorized under the new constitutional provision hereinabove set out.

Counsel for relator in the instant proceeding also appeared for the plaintiff in the recently decided Maryland Casualty Co., case, and the two cases present substantially identical points, but upon dissimilar facts. In the Maryland Casualty case it was held that upon the actual facts there was no duty on the part of the insurance company to defend because it appeared that the employe had sustained an accident, and hence exclusive jurisdiction of his cause of action was vested in the Workmen's Compensation Commission. The employe had originally filed his claim with that commission, and the insurance company took charge of the matter, and, carrying out its policy obligations, made payments to him under the Compensation Act until he became dissatisfied with this remedy (which was the only one he had under the facts), and attempted to assert a claim for occupational disease, and which the insurer refused to defend because it was excluded from the coverage. We think that case was properly decided. But, as stated, the facts at bar are different. The only showing as to the actual facts touching the nature of Potter's injuries is that he was suffering from an inflammation of the skin as the result of washing or cleaning steel oil drums with gasoline, and which is referred to in the briefs as ''dermatitis.'' This appeared from a transcript of his testimony given at the trial of his damage suit, which transcript was offered by Equity. His testimony, as reflected by said transcript, was to the effect that three or four weeks after he had been so washing drums, he began to have trouble with his hands and arms; they ''were red and swollen, little. blisters under the skin;'' six weeks later, they ''broke out over night—sores—a watery substance came out of them. They would break into open sores.'' His hands and forearms became red and swollen, some fingers swelling to twice their normal size, with open, running sores. He complained and was directed to quit washing the drums for two weeks. In that interval his hands improved somewhat. When, at the expiration of two weeks, he resumed washing operations, he was furnished with rubber gloves, and he complained that these irritated his hands. He was sent to a physician, and treated. There was some improvement in his condition, but then the ''sores would get well in one place and break out in another.'' Afterwards his feet broke out, likewise on his shoulder, forehead, and the corner of his left eye. He was sent to another physician and again treated. Finally he left his employment because of his condition, at which time the sores were ''running'' and ''pretty bad.'' He stated he had not previously had any

·skin trouble. At the time of the trial he was still affected and complained of the burning, stinging, itching sensation caused by the several sores on his feet, hands and forearms which he exhibited to the jury. It must be assumed that these facts were, or could have been known by Equity from a reasonable investigation at the time of the commencement of Potter's action.

As we view this phase of the matter, under the record before us, the only way the insured may be deprived of its right to the new trial awarded it on the ground that the verdict was against the weight of the evidence is for us, in the absence of any proof on the question, to judicially notice that dermatitis, and Potter's particular form thereof, is an occupational disease, and this we are not authorized to do. [Smith v. Harbison-Walker Refractories Co., 340 Mo. 389, 100 S. W. (2d) 909.]

.The Court of Appeals was undoubtedly correct in treating Potter's petition as one for an occupational disease, but Inter-State urges, as did the insured in the Maryland Casualty case, that, under the employe's petition, a recovery could be had without proving an occupational disease. The validity of that claim was denied in the latter case because the actual facts were that the employe had sustained an accident arising out of and in the course of his employment, and therefore the insured would not be heard to say that the employe could have recovered under his petition without proving an occupational disease "because that would decide the case on the condition of ▮▮▮ the pleadings instead of on the actual facts as plaintiff contends and we agree must be done." But, unlike the Maryland Casualty case, here the actual facts are not fully developed (doubtless because it was thought Potter's petition controlled) ; and, in any event, the actual facts presented. do not negative the existence of a common law cause of action for damages growing out of Inter-State's negligence, and not covered by the workmen's compensation or the occupational disease statutes, such as in Row v. Cape Girardeau Foundry Co. (Mo. App.), 141 S. W. 113. If, therefore, the dermatitis in question is not an occupational disease (and there is no proof either way on the point), we see no reason why the doctrine of the Row case is not applicable. In this connection it was said in the Maryland Casualty case: "We may concede that if the suit against plaintiff had been based on a claim of tuberculosis, pneumonia or some other disease which was not an occupational disease, and claimed to have been caused by plaintiff's negligence, then defendant would have been required to defend it." We do not discuss the duty to defend if the facts be regarded as bringing Potter's claim within the Compensation Act, as that question is not raised by the briefs.

▮▮ To set at rest another question, we take notice of relator's contention that in any event. the insurance company was required to defend under clause 3 of the policy hereinabove set out. It will be

recalled that the exclusion endorsement reads as follows: "It is agreed that the Policy of which this endorsement forms a part does not afford insurance under Paragraph One (b) with respect to occupational disease."

This language is not as comprehensive and sweeping as that used in the exclusion endorsement in the Maryland Casualty case, as follows: "The policy to which this endorsement is attached does not cover occupational disease. It is agreed that the policy of which this endorsement forms a part does not afford insurance under Paragraph One (b) with respect to occupational disease. The provisions of paragraphs Two, Three and Four shall not apply with respect to occupational disease, insurance for which is herein excluded under paragraph One (b)." But we think its substance is just as plain, and that a fair construction requires that it be given the same meaning and effect, from which it follows that what was said in the latter case in relation to the insurance company's duty, under the defense clause of the policy and the exclusion endorsement, is applicable in the case at bar.

The opinion is quashed, and the order granting a new trial affirmed, and the cause ordered remanded. All concur except *Gantt, J.*, absent.