**TRAINWRECK WEST INC., Appellant,**

v.

**BURLINGTON INSURANCE CO., Respondent,**

and

**Cheri Neff, Appellant.**

**No. ED 88428.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 14, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 9, 2007.

Thomas B. Hayes, David N. Damick, St. Louis, MO, for appellants.

Michael B. Maguire, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Trainwreck West, Inc ("Trainwreck") and Cheri Neff ("Ms. Neff") appeal from the judgment of the Circuit Court of St. Louis County granting Burlington Insur-

ance Co.'s ("Burlington") Motion for Summary Judgment with respect to Trainwreck and Ms. Neff's individual requests for a declaratory judgment that Burlington's commercial general liability policy ("CGL policy") covered Ms. Neff's claims for personal injuries. We affirm.

### Facts and Proceedings Below

In January 2003, Burlington issued and delivered a CGL policy to Trainwreck, the owner and operator of a nightclub in Westport Plaza. The CGL policy, in effect at the time of Ms. Neff's injury, insured Trainwreck for any loss or damage to a third party arising out of negligent acts committed by Trainwreck while operating as a nightclub and obligated Burlington to defend Trainwreck from those claims. The CGL policy contained an "assault or battery" exclusion, which stated that insurance does not apply to "bodily injury or property damage arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery."

On January 31, 2003, Ms. Neff and her friends, Susan Price, Mike Price and Gary Woods, were patrons at Trainwreck's bar and restaurant in Westport Plaza. After approximately 3 or 4 hours, one of Ms. Neff's friends, Mike Price, dropped, threw or knocked a glass onto the floor, which then shattered. George Hansford, one of Trainwreck's owner-operators, and Dan Sage, one of Trainwreck's managers, saw Mr. Price throw the glass to the floor. Mr. Hansford subsequently asked Ms. Neff and her party to leave the bar. Although Mr. Price left immediately and went outside, it took Hansford and several employees fifteen to twenty minutes to herd the remaining three out the door. On the way out the door, Ms. Neff fell and sustained personal injuries.

Several months later, Ms. Neff's counsel sent an attorney's lien letter to Trainwreck, contending that Ms. Neff was injured at Trainwreck "when she was violently and unexpectedly pushed out of your establishment by 'your' security people. This caused her to fall, resulting in … damage to her body." On July 23, 2004, Trainwreck submitted the letter, along with a written statement from George Hansford, pages from Trainwreck's logbook and an excerpt from the police report of the incident, to Burlington. Hansford's letter stated that he was present at the nightclub at the time of the incident and remembered it well. The daily log noted that: (1) Ms. Neff and her friends had started a "scuffle;" (2) the "doormen pushed them out;" and (3) Trainwreck called the police to handle the situation. The police report stated that: (1) Ms. Neff and her friends were causing a disturbance in the bar; (2) Ms. Neff and her party refused to leave; (3) one of the people in Ms. Neff's party broke a glass; and (4) it took fifteen minutes to remove them from the bar. On July 24, 2003, Burlington denied coverage, concluding that "the loss arose from an assault or battery." Burlington did not speak with any Trainwreck agents or employees and did not interview anyone present at the bar at the time of the incident.

In July 2004, Ms. Neff filed a lawsuit in the Circuit Court of St. Louis County against Trainwreck for personal injury damages caused by Trainwreck's employees or agents. Count I "Negligence—Trainwreck West, Inc" of Ms. Neff's Petition states, in pertinent part:

. . . .

10. While leaving the facility, Plaintiff was pushed out the door by one of the "bouncers," an employee or agent of the Defendant when she approached the exit.

11. As a direct result of being pushed, Plaintiff fell to the ground, sustaining injuries to her left lower extremity and general trauma through her body.

12. At all times mentioned herein, the facility owed Plaintiff a duty to protect her from foreseeable attacks by bouncers or employees who are careful, knowledgeable and non-violent.

13. That notwithstanding the duty owed by the Defendant to the Plaintiff, Defendant facility committed one or more of the following negligent and careless acts or omissions:

a. Defendant's employee or agent negligently pushed Plaintiff with excessive force or otherwise unnecessarily, causing her to fall;

b. Failed to provide adequate pre-employment screening;

c. Failed to provide for adequate employee hiring;

d. Failed to provide adequate employee training;

e. Failed to provide adequate employee supervision;

f. Failed to provide adequate trained security personnel[.]

Count II "Battery—Trainwreck West, Inc" of Ms. Neff's Petition states in pertinent part:

. . . .

10. While leaving the facility an employee or agent of the Defendant committed a battery upon the plaintiff by pushing her and causing her to fall. As a result of being pushed Plaintiff fell to the ground, sustaining injuries to her left lower extremity and general trauma throughout her body.

11. . . . [T]he facility owed Plaintiff a duty to protect her from foreseeable attacks by bouncers or employees, to supervise employees in a diligent and reasonable manner as well as to hire employees, to supervise employees in a diligent and reasonable manner as well as to hire employees who are careful, knowledgeable and non-violent[.]

Upon receiving notice of Ms. Neff's lawsuit, Trainwreck tendered the defense of it to Burlington and sought indemnity with respect to Ms. Neff's claims. On August 5, 2004, Burlington again denied coverage, asserting the CGL policy's "assault or battery" exclusion barred coverage.

In October 2004, Trainwreck filed the instant declaratory judgment action against Burlington, claiming that the CGL policy did not bar coverage for Ms. Neff's injuries and therefore, required Burlington to defend and indemnify Trainwreck for the claims contained therein. Burlington successfully moved to join Ms. Neff as a necessary party, pursuant to Rule 52.04, and then brought a counterclaim against Trainwreck and a cross-claim against Ms. Neff. In both pleadings, Burlington asserted that, because Ms. Neff's personal injuries arose out of an "assault or battery or out of acts or omissions in connection with the prevention or suppression of an assault or battery," it did not owe a duty to defend or indemnify Trainwreck from the underlying lawsuit.

Thereafter, Burlington moved for summary judgment, claiming that the "assault or battery" exclusion barred coverage. Trainwreck responded to Burlington's Motion for Summary Judgment, arguing that genuine issues of material fact existed regarding whether Ms. Neff sustained her injuries through a Trainwreck employee's negligence. In so arguing, Trainwreck relied upon several depositions taken in the underlying lawsuit.

The same day as the hearing on Burlington's Motion for Summary Judgment, without notice to either the trial court or Burlington, Ms. Neff and Trainwreck en-

tered into a Section 537.065 [1] agreement in the underlying lawsuit and Ms. Neff filed an Amended Response to Burlington's cross-claim.[2] Thereafter, Trainwreck filed a Motion to Supplement Plaintiff's Response to Defendant's Motion for Summary Judgment, in which Trainwreck requested leave to file additional exhibits in response to Burlington's motion. These exhibits included Ms. Neff's Amended Response to Burlington's Cross–Claim and the Amended Petition from the underlying lawsuit. Trainwreck did not include its Section 537.065 agreement with Ms. Neff or the $150,000 Judgment entered, on November 28, 2005 following a bench trial, in the underlying case. The trial court denied Trainwreck's Motion to Amend and Ms. Neff did not provide Burlington with a copy of her Amended Petition prior to entering into a settlement agreement with Trainwreck.

The trial court granted summary judgment in Burlington's favor. The trial court found that the "assault or battery" exclusion barred coverage because: (1) the "assault or battery" exclusion was unambiguous; (2) the ascertainable facts at the time the lawsuit was filed were consistent with the allegations in Ms. Neff's Petition; and (3) both the ascertainable facts and the Petition supported application of the "assault or battery" exclusion. Train-

wreck and Ms. Neff appealed individually and later consolidated their appeals.

### Standard of Review

Our review of summary judgment is *de novo*. *ITT Comm'l Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will uphold the grant of summary judgment on appeal if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Id.* "[A] 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. We view the record in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. We accept as true facts contained in affidavits or otherwise in support of a party's motion unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* "Summary judgment is frequently used in the context of insurance coverage questions, and the interpretation of an insurance policy is a question of law." *Niswonger v. Farm Bureau Town & Country Ins. Co.*, 992 S.W.2d 308, 312 (Mo.App. E.D. 1999). "Where the underlying facts are

1. All statutory references are to R.S.Mo. (2000) unless otherwise indicated.

2. Neither the trial court nor Burlington received any notice of the Section 537.065 agreement or of the $150,000 judgment, which was entered on November 28, 2005 and neither had notice of the Amended Petition until Trainwreck moved to supplement its response to Burlington's Motion for Summary Judgment. In her amended response to Burlington's Cross–Claim, Ms. Neff states that while she was pushed by an agent or employee of Trainwreck, the "pushing [did] not necessarily rise to the level of an assault as it [might have been] a mere pushing/coaxing/jostling/crowd control by [employees] ...

or potentially by other non-employees[.]" In Ms. Neff's Amended Petition in the underlying suit, she dismissed Count II of her original Petition and alleged in Count I that when the employees or agents were attempting to request that Ms. Neff and her party leave Trainwreck—"without altercations, pushing or shoving"—someone, possibly an employee or agent of Trainwreck's—"negligently jostled" Plaintiff. The Amended Petition further stated that Trainwreck owed Ms. Neff a "duty to protect her from foreseeable jostling in a diligent and reasonable manner as well as to hire employees who are careful, knowledgeable in crowd control."

not in question, disputes arising from the interpretation and application of an insurance policy are matters of law." *Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. banc 2002).

### Discussion

Trainwreck contends on appeal that: (1) the trial court erred in failing to consider depositions from the underlying matter because they create a genuine issue of material fact as to whether Ms. Neff's injury arose out of an assault or battery; (2) the "assault or battery" exclusion is ambiguous and therefore, does not bar coverage of Ms. Neff's claim; (3) Burlington failed to conduct a reasonable investigation of the facts so as to reasonably ascertain facts establishing that Neff's injury arose from negligence; and (4) the obligations imposed upon Trainwreck as a liquor licensee by state regulations override the "assault or battery" exclusion as a matter of public policy. Ms. Neff joins Trainwreck as to its second, but not first, third and fourth point. In addition, Ms. Neff also argues individually that the undisputed facts of the case establish, as a matter of law, that the CGL policy covered her injuries. Although we address some of Ms. Neff's point throughout Trainwreck's second point, we will address the remainder of her point separately.

### I. Trainwreck's Claims

#### A. Deposition Testimony Establishing a Duty to Defend

**3.** Because Trainwreck did not give Burlington notice of Ms. Neff's Amended Petition prior to entering into a Section 537.065 .agreement, we cannot consider whether the Amended Petition might have invoked a duty to defend. *See Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 620 (Mo.App. E.D.2001) (holding that an "insurer must be given notice of the complaint or pleading, which would invoke the duty to defend."); 7C John A. Appleman, *Insurance*

In Trainwreck's first point, it contends the trial court erred in finding that no genuine issue of material fact existed regarding whether Burlington had a duty to defend.[3] Specifically, Trainwreck argues that the deposition testimony from the underlying lawsuit establishes a genuine issue of material fact regarding whether Ms. Neff's injury arose out of the negligence of Trainwreck's employee or agent. Burlington, however, contends that the deposition testimony cannot create a genuine issue of material fact because those facts emerged during discovery and not at the time Ms. Neff filed her suit. We agree.

"The obligation of defendant to defend a suit filed against plaintiff is to be determined from the cause of action pleaded, *at the time the action is commenced,* not from what an investigation or a trial of the case may show the true facts to be." *Inter–State Oil Co. v. Equity Mut. Ins. Co.*, 183 S.W.2d 328, 332 (Mo.App.K.C. 1944) (emphasis added). Thus, in reviewing whether a genuine issue of material fact exists regarding whether Burlington owed Trainwreck a duty to defend, we do not rely upon "facts that emerged during discovery" and will examine only those facts known to or reasonably ascertainable by Burlington at the time Ms. Neff filed her Petition. *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 969 (8th Cir. 1999); *see also Inter–State Oil Co.*, 183 S.W.2d at 332; Appleman §§ 4683.01, 4384.

*Law and Practice* (Berdal ed. 1979) § 4683 ("An insurer must be given notice of an amended pleading which would impose a duty to defend, and a failure to give notice will relieve the insurer of liability under the policy."). Accordingly, we only consider the exhibits attached to Trainwreck's original Response to Burlington's Motion for Summary Judgment and will not consider Ms. Neff's Amended Petition or Amended Response to Burlington's Cross–Claim.

Here, the deposition testimony was not available to Burlington at the time Ms. Neff brought her lawsuit against Trainwreck. Rather, it was obtained by Neff and Trainwreck during discovery of the underlying lawsuit or well after the declaratory judgment suit had commenced. In fact, the depositions occurred as Trainwreck prepared its Response to Burlington's Motion for Summary Judgment. The deposition testimony does not create a genuine issue of material fact regarding whether Burlington owed a duty to defend, because the facts established therein were not available at the time Neff commenced her lawsuit, but rather from a subsequent investigation. Point denied.

### B. Ambiguous Policy Language

■ Trainwreck contends the trial court erred in granting summary judgment in Burlington's favor, because the CGL policy's "assault or battery" exclusion is ambiguous.[4] In particular, Trainwreck asserts that "there is an inherent ambiguity in [the CGL policy] because it relies on the legal terms of art "assault" and "battery," without providing a definition of either term in the policy or by referring to either statute or commonly accepted legal treatises for meaning." Specifically, Trainwreck contends that the CGL policy does not distinguish "between assault and battery in their many criminal statutory applications and degrees, and assault and battery as the basis for civil liability." Moreover, Trainwreck maintains that the CGL policy makes no reference to or exception for protection of life or property, a widely understood and "accepted defense to civil assault and battery." As a result, Trainwreck asserts, few, if any, insureds would understand the meaning of the terms "assault" or "battery" without definition.

■ An insurance policy is ambiguous if its provisions are duplicitous or difficult to understand. *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 342–43 (Mo. App. E.D.2000). An insurance policy, however, is not ambiguous merely because the parties disagree over its meaning. *Atlas Reserve Temporaries, Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo.App. W.D.2001). "When policy language is ambiguous, it must be construed against the insurer." *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999). "In interpreting whether the language used in the policy is ambiguous, the words will be tested in light of the meaning which would normally be understood by the average layperson, the layperson's definition will be applied unless it plainly appears that the technical meaning is intended." *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo.App. E.D.1993); *see also Martin*, 996 S.W.2d at 508. The failure of a policy to define a term does not, in and of itself, render it ambiguous. *Farmland Indus. Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. banc 1997); *Peck*, 998 S.W.2d at 74.

In support of its argument that the "assault or battery" exclusion is ambiguous, Trainwreck relies on *Alea London Ltd. v. Bono–Soltysiak Enterprises*, 186 S.W.3d 403, 413 (Mo.App. E.D.2006). *Alea London*, however, is distinguishable from the present matter. In *Alea London*, we found that a binder, a temporary contract of insurance, created an ambiguity as to the meaning of the assault and battery exclusion because the applicable type of policy employed at least two distinct definitions for assault and battery exclusions. *Id.* Here, however, the CGL policy merely fails to define the terms "assault" and "battery" and neither party has proposed

---

4. Ms. Neff joins Trainwreck as to this point and contends that the failure of the CGL policy to define the terms "assault" or "battery" renders it ambiguous.

that any alternative or contradictory definitions apply.

■ Additionally, Trainwreck posits that the CGL policy is inherently ambiguous because it fails to make reference to or exception for a property owner's right to use reasonable force to remove a trespasser, a well-recognized defense to civil assault or battery.

However, Trainwreck's contention fails because Ms. Neff's theory of recovery was for pushing with excessive force or battery by pushing. As the court held in *Acceptance Insurance Co. v. Winning Concepts of Westport, Inc.*, when the patron's theory of recovery was for "use of unreasonable force without just cause or provocation. Reasonable force for the purpose of protecting persons or property is not in issue under the record herein." 842 S.W.2d 206, 207 (Mo.App.W.D.1992).

Here, the first count of Ms. Neff's petition, like that in *Winning Concepts,* states that a Trainwreck bouncer "pushed [her] with excessive force or otherwise unnecessarily, causing her to fall." In the second count, Ms. Neff states that a Trainwreck employee committed a battery upon her by pushing her and causing her to fall. As with *Winning Concepts,* whether Trainwreck had a right to commit a battery in order to defend its property is not at issue under the allegations of Ms. Neff's Petition. *See id.* Under Ms. Neff's theory of the case, a Trainwreck employee pushed her unreasonably and without necessity and therefore, whether Trainwreck had a right to commit a battery in order to defend its property is not at issue in the case. *See id.* Point denied.

## C. Duty to Conduct a Reasonable Investigation

■ In Trainwreck's third point on appeal, it contends the trial court erred in granting Burlington's Motion for Summary Judgment because genuine issues of material fact exist regarding whether Burlington conducted a reasonable investigation which would have revealed facts establishing coverage of Ms. Neff's claim. Trainwreck further argues that Burlington is bound by deposition testimony taken during discovery of the underlying matter because, had it conducted a reasonable investigation, Trainwreck would have become aware of this testimony.

Trainwreck's contention that had Burlington spoken with the eight witnesses deposed in the underlying matter, it would have concluded that Ms. Neff's claims came within the coverage of the policy is unavailing for two reasons. First, the allegations contained within Ms. Neff's Petition and the actual facts provided to Burlington by Trainwreck established a claim for damages arising out of an assault and battery and therefore, Burlington did not have a duty to defend at the time it denied the claim. Second, assuming *arguendo* that Burlington should have considered the facts established in the deposition testimony at the time it denied the claim, those facts do not contradict the allegations set out in Neff's Petition.

■ Initially, any analysis of a duty to defend begins with the plaintiff's petition. *See Standard Artificial Limb, Inc. v. Allianz Ins. Co.,* 895 S.W.2d 205, 210 (Mo.App. E.D.1995). "The obligation of the insurer to defend arises only as to claims and suits for damages covered by the terms of the policy." *Benningfield v. Avemco Ins. Co.,* 561 S.W.2d 736, 737 (Mo. App.K.C.1978). The "plaintiff is the master of the [petition], and if [he or she] does not seek covered damages, there is no duty to defend even if these facts could support such damages." William T. Barker, *When Can Extrinsic Evidence Defeat the Duty to Defend?* in *New Appleman on Insurance: Current Critical Issues in Insur-*

*ance Law* III.C (April 2007). The "insurer's duty to defend depends upon the pleaded theories upon which plaintiff announces ready for trial." *Appleman on Insurance* § 4684. An insurer does not have a duty to defend a suit where the petition "upon its face alleges a state of facts which fail to bring the case within the coverage of the policy." *Couch on Insurance* § 51:45. "Moreover, [w]here the policy excludes intentional acts and the allegations clearly set forth a cause of action for battery, there is no coverage and hence no duty to defend." *Id.* "The insurer owes no duty of defense where ... the allegations of claimant's petition and the insurance contract demonstrate that coverage does not apply." *Benningfield,* 561 S.W.2d at 737.

▮▮▮▮ However, the allegations contained within the petition alone are not the sole determinant of the duty to defend. *Standard Artificial Limb, Inc. v. Allianz Ins. Co.,* 895 S.W.2d 205, 210 (Mo.App. E.D.1995). Thus, "[t]he insurer cannot ignore safely actual facts known to it or which could be known to it or which could be known from reasonable investigation." *Id.* "[A]ctual facts are those facts which were known, or should have been reasonably apparent at the commencement of the suit and not the proof made therein or the final result reached." *State ex rel. Inter-State Oil Co. v. Bland,* 354 Mo. 622, 190 S.W.2d 227, 229 (1945).

As an initial matter, we note that the allegations contained within Ms. Neff's Petition and the actual facts known by Burlington establish a claim for damages arising out of an assault or battery. In the "negligence" count of Ms. Neff's Petition, she alleged, in pertinent part, that: (1) "while leaving the facility, Plaintiff was pushed out the door by one of the 'bouncers';" (2) "as a direct result of being pushed, Plaintiff fell to the ground, sus-

taining injuries;" and (3) "the facility owed Plaintiff a duty to protect her from foreseeable attacks by bouncers or employees who are careful, knowledgeable and non-violent." Thus, under Ms. Neff's theory of the case, she was injured when a Trainwreck bouncer pushed her.

Moreover, prior to the underlying litigation, Trainwreck submitted several documents to Burlington. These documents included: (1) a letter from Ms. Neff's counsel stating that Ms. Neff was injured at Trainwreck "when she was violently and unexpectedly pushed out of your establishment by 'your' security people;" (2) a police report stating that Ms. Neff and her friends were causing a disturbance in the bar; that Ms. Neff and her party refused to leave; that one of the people in Ms. Neff's party broke a glass, and that it took fifteen minutes to remove them from Trainwreck; and (3) pages from Trainwreck's logbook stating that Ms. Neff and her friends had started a "scuffle," that the "doormen pushed them out" and that Trainwreck called the police to handle the situation. These documents further establish that Ms. Neff's injury arose out of an assault or battery, i.e., when a Trainwreck bouncer "pushed" her. Here, the allegations contained within Ms. Neff's Petition, as well as the facts submitted by Trainwreck to Burlington at the time of the request for coverage, establish a claim for damages clearly within the "assault or battery" exclusion.

▮▮▮▮ After Burlington refused to defend Trainwreck in the underlying lawsuit, Ms. Neff and Trainwreck deposed eight witnesses to the incident. Even if Burlington should have interviewed the eight witnesses to the incident or considered their deposition testimony, the facts developed therein do not contradict the allegations contained within Ms. Neff's Petition

or the actual facts known to Burlington at the time of the request for coverage.

In Ms. Neff's deposition, she testified that after she fell, she asked a police officer to take her back inside so she could point out the bouncer who "shoved" her. In Ms. Price's deposition, she stated that "someone grabbed me and I was being pushed sideways out the door;" "I was trying to break loose from somebody ... and I smacked a cop right in the head;" and "[t]hey were pushing me out the door. They were pushing all of us out the door." Ms. Price further testified, "I believe that different bouncers were just trying to push us out. One was pushing this way; another was pushing that way; and one was pushing straight." Ms. Price also stated that although she never saw Ms. Neff fall, she did hear Ms. Neff ask the police if they would let her back inside so she could point out the bouncer who pushed her. Mr. Woods testified that while the bouncers didn't pick [Ms. Neff] up, "they did shove her." Mr. Woods further stated that after the bouncers had herded them outside, he was yelling through the door at the bouncers asking what they were doing pushing Ms. Neff, "why don't you step out here and push ... pick on a grown man."

Here, the deposition testimony does not create a genuine issue of material fact regarding whether Ms. Neff's injuries arose from Trainwreck's negligence. Rather, it supports an inference that Ms. Neff's injuries arose out of an assault or battery. Consistent with her Petition and the documents given to Burlington at the time of the claim, Ms. Neff and the other deponents testified that one or more Trainwreck bouncers pushed them. Point denied.

### D. Public Policy

■ In its fourth point on appeal, Trainwreck asserts the trial court erred in granting summary judgment in Burling-

ton's favor because the obligations imposed upon Trainwreck, as a liquor licensee, by 11 C.S.R. 70–2.130(13) override the "assault or battery" exclusion as a matter of public policy. In particular, Trainwreck contends that state regulations require Trainwreck to assume duties to control the conduct of its patrons and the public policy behind that requirement "trumps" the CGL policy's exclusion.

■ As an initial matter, Trainwreck failed to raise this issue in the trial court. Appellate review of a grant of summary judgment "is limited to those issues put before trial court." *Country Mut. Ins. Co. v. Matney*, 25 S.W.3d 651, 654 (Mo.App. W.D.2000). If a party fails to present an issue to the trial court, it has not preserved the issue for appellate review. *Id.* However, even if we were to consider this point, we are not persuaded by Trainwreck's position. Courts in this state have routinely upheld "assault or battery" exclusions in cases involving actions to prevent or control the behavior or conduct of bar patrons and no established statutory restriction or public policy mandate prohibits such exclusions. *See e.g., Peck v. Alliance General Ins. Co.*, 998 S.W.2d 71, 74 (Mo.App. E.D.1999); *Penn–America Ins. Co. v. The Bar, Inc.*, 201 S.W.3d 91, 97–98 (Mo.App. W.D.2006). Point denied.

### II. Neff's Negligence Claim

■ In her sole separate point on appeal, Ms. Neff argues the trial court erred in granting Burlington's Motion for Summary Judgment because the undisputed facts of the case establish that her injuries did not arise from an assault or battery, but rather were caused by Trainwreck's negligence. In response, Burlington argues that Ms. Neff's claim for negligence arose out of an assault or battery and

therefore, the "assault or battery" exclusion precludes coverage.

Initially, Ms. Neff contends that a final assessment of whether a duty to defend and a duty to indemnify exist must await determination of actual facts after final determination of the case. In essence, Ms. Neff argues that a determination of whether Burlington owed a duty to defend is irrelevant to whether Burlington ultimately owed a duty to indemnify Trainwreck. We disagree.

 A liability insurer has "two distinct duties, the duty to indemnify the insured for covered losses, and the duty to defend the insured in any lawsuit seeking damages that would be covered losses." *Esicorp*, 193 F.3d at 969. "The duty to defend arises when the insured is first sued and thus is understandably broader than the duty to indemnify." *Id.* "Where there is no duty to defend, there is no duty to indemnify." *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.*, 71 S.W.3d 232, 236 (Mo.App. W.D.2002). Accordingly, if Burlington owed Trainwreck no duty to defend then it owed Trainwreck no duty to indemnify.

In asserting that Burlington owed Trainwreck a duty to defend, Ms. Neff argues that Burlington failed to adduce evidence that a battery occurred directly to Ms. Neff or that a Trainwreck employee acted because he intended to prevent an assault or battery. Specifically, Ms. Neff contends that her Petition asserted two claims against Trainwreck: one for negligence and one for battery.

"[A]lthough the injuries may have been caused by the negligent acts of the defendant that does not necessarily mean that they did not arise out of an assault or battery." *Id.; see also Appleman* § 4683.01. Under the circumstances presented here, where a plaintiff's negligence claim arises out of an assault or battery, the assault or battery exclusion bars coverage of the insured's negligence claim. *Capitol Indemnity Corp. v. Callis*, 963 S.W.2d 247, 250 (Mo.App. W.D.1997).

In *Penn–America Insurance Co. v. The Bar, Inc.*, a bar patron asserted both a claim for battery and a claim for negligence against the insured, arguing that a bouncer's failure to use reasonable means in expelling the bar patron caused his injury. 201 S.W.3d 91, 97 (Mo.App. W.D. 2006). The court held that a bouncer's failure to exercise non-violent means to eject a bar patron from the premises was an "act or omission in connection with the prevention or suppression of [an] assault and battery." *Id.* Thus, the court held, that "because the exclusion barred coverage for both an actual assault and battery and the negligence which allegedly caused the assault and battery, the insurer did not have a duty to defend the underlying lawsuit." *Id.* at 97–98.

Burlington's "assault or battery" exclusion and the exclusion language in *Penn–America* both employ the phrase "arising out of an assault or battery." *Id; see also Capitol Indem. Corp.*, 963 S.W.2d 247, 249 (Mo.App. W.D.1997). " 'Arising out of' is read within the context of the surrounding language of the exclusion, which encompasses act by employees .... [and] plainly and unambiguously excludes any acts by employees that arise out of an assault and/or battery." *Capitol Indem. Corp.*, 963 S.W.2d at 249; *see also Berg v. Schultz*, 190 Wis.2d 170, 526 N.W.2d 781, 784 (Wis.App.1994) ("[A] plaintiff asserting a cause of action against a proprietor ... under a theory of negligence does not avoid the assault and battery exclusion of an insurance policy."); *Acceptance Ins. Co. v. Winning Concepts*, 842 S.W.2d 206, 208 (Mo.App. W.D.1992) ("Negligently hiring persons with violent propensities, which

... results in an individual being assaulted and battered is an act or omission in connection with the prevention and suppression of assault and battery.")

Ms. Neff's contention that there has been no factual determination as to whether an assault or battery occurred is unavailing. As with *Penn–America*, Ms. Neff's Petition asserts that had the Trainwreck bouncer used reasonable means to remove Ms. Neff from the premises, Ms. Neff would not have sustained her injury. Ms. Neff's Petition states that "while leaving the facility, Plaintiff was pushed out the door by one of the bouncers." The Petition further notes that the "facility owed Plaintiff a duty to protect her from foreseeable attacks by bouncers" as well as to hire non-violent employees. In addition, the Petition states that a Trainwreck agent or employee negligently pushed Ms. Neff with excessive force, causing her to fall. Like *Penn–America*, the negligence allegation contained within Ms. Neff's Petition is premised upon an assault or battery by a Trainwreck bouncer. Moreover, neither the actual facts nor the "reasonably ascertainable" testimony provided by witnesses contradict Ms. Neff's allegation that she sustained injuries when a Trainwreck bouncer pushed her. Accordingly, Ms. Neff's Petition asserts a claim for negligence action arising out of an assault or battery. Point denied.

### Conclusion

Based on the foregoing, the judgment of the trial court is affirmed.

GEORGE W. DRAPER III, P.J., and ROBERT G. DOWD, JR., J., Concur.