

# Missouri Court of Appeals

### Southern District

#### In Division

ROBERT L. HALL, M.D., )
)
Appellant, )
) No. SD38046
vs. )
) FILED: December 16, 2024
UNUM LIFE INSURANCE COMPANY OF AMERICA, )
)
Respondent. )

## APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael Pritchett, Judge

**<u>AFFIRMED</u>**

Robert Hall ("Appellant") appeals the decision of the trial court granting a motion for summary judgment filed by UNUM Life Insurance Company of America ("Respondent") and denying Appellant's motion for summary judgment. In three points on appeal, Appellant argues that (1) the trial court erred in granting summary judgment to Respondent and denying summary judgment to Appellant because Appellant was "totally disabled" under a disability insurance policy ("Policy") prior to December 10, 2012, such that he was eligible for lifetime total disability under the "Lifetime Sickness Benefit Rider ("Rider") to the Policy"; (2) the trial court erred in granting summary judgment to Respondent and denying summary judgment to Appellant because the Policy's "total disability" definition is ambiguous and should be construed in favor of Appellant; and (3) in the alternative, the trial court erred in granting summary

judgment because a genuine dispute of material fact existed as to whether Appellant was totally disabled under the Policy. Finding no merit in Appellant's points, we affirm the trial court's judgment.

## Factual Background and Procedural History

Respondent issued the Policy to Appellant with an effective date of December 10, 1992. Appellant's "regular occupation" under the Policy was that of a general surgeon. The material and substantial duties of Appellant's occupation as a general surgeon under the Policy included surgeries, pre-op exams, post-op exams, reviewing x-rays/labs, administrative work, and emergency consultations. In 2010, Appellant joined Pocahontas Medical Group as a general surgeon and began performing surgeries at Five Rivers Medical Center ("FRMC"). He was credentialed by FRMC to perform various surgical procedures and was expected, as a term of his contract, to devote a minimum of forty hours per week to patient care within his specialty of general surgery. In addition, Appellant was to "share and rotate responsibilities for on-call coverage with other physicians which provide the same type of medical services provided" by Appellant.

Under the Policy, Appellant was entitled to disability benefits depending on whether he was "totally" or "residually disabled." As relevant to this appeal, the Policy defines "total disability" or "totally disabled" as "injury or sickness restricts your ability to perform the material and substantial duties of your regular occupation to an extent that prevents you from engaging in your regular occupation." "Residual disability" or "residually disabled" is defined as:

> injury or sickness does not prevent you from engaging in your regular occupation,
> BUT does restrict your ability to perform the material and substantial duties of
> your regular occupation (a) for as long a time as you customarily performed them

before the injury or sickness, or (b) as effectively as you customarily performed them before injury or sickness.

The Policy also further defined residual disability to "mean that as a result of the same injury or sickness which caused you to satisfy the Elimination Period: you experience at least a 20% loss of net income in your regular occupation." "Regular occupation" was defined as the insured's "occupation at the time the Elimination Period begins," which included "professionally recognized" specialties. The Policy further defined an "Elimination Period" as a fixed number of days of disability that must pass before benefits are payable, beginning "on the first day that you are totally or residually disabled." Benefits under the Policy would only be paid until the end of the "Maximum Benefit Period," which was defined as "the later of (A) age 65 policy anniversary or (B) 24 months after disability payments begin."

The Policy also included the Rider, under which Appellant was entitled to monthly sickness benefits if, after satisfying the Elimination Period, he becomes totally disabled and that such total disability "(a) is the result of sickness which began before the policy anniversary when your age was 60 and while this rider was in effect and (b) began before the policy anniversary when your age was 60 and has been continuous until the month for which this benefit is payable." Appellant's age-60 Policy anniversary date was December 10, 2012.

In the months preceding June 2012, Appellant consistently performed approximately thirty to seventy procedures per month. Beginning in June 2012, Appellant's exposure to substances and materials in the operating room caused the formation of open sores on his hands. The cause of Appellant's sores was diagnosed as systemic contact dermatitis which was exacerbated each time he was exposed to substances he encountered and used during surgeries. Appellant's systemic contact dermatitis worsened each time he performed surgery. Open sores formed close to his face and eyes resulting from his exposure to materials and substances in the

3

operating room. Because performing surgery on patients with open sores exposed both Appellant and his patients to risks of infection, Appellant's condition often required him to take multiple consecutive days and weeks off work to recover without performing surgeries or his other duties at FRMC. He was often restricted from covering the on-call surgery schedule from days to weeks at a time due to his sickness.

Although between June 2012 and April 2013, Appellant could not devote a minimum of forty hours per week to patient care in his surgery practice, the times when Appellant could not perform surgeries were unpredictable, but always temporary. Even though Appellant periodically took time off work to recover, he received his full salary throughout his employment and performed surgeries and other medical procedures from June 2012 through April 2013. He performed twenty-seven procedures in June, twenty-two procedures in July, twenty-two procedures in August, forty-six procedures in September, twenty-six procedures in October, twenty-two procedures in November, and seventeen procedures in December. He performed surgeries and utilized the operating room multiple times per month, performing sixty-eight surgeries and other medical procedures after December 2012. During outbreaks of his condition Appellant could sometimes perform other duties of his occupation besides surgeries.

Appellant continued his employment at FRMC but performed fewer procedures until April 2013, at which point a physician advised him that he should stop performing surgeries because his disability "no longer permits [him] to carry on as a general surgeon . . . ." Appellant submitted a disability insurance claim under the Policy and also submitted a claim for lifetime sickness benefits under the Rider to Respondent on July 8, 2013. The claim forms stated that Appellant's date last worked was May 1, 2013, and listed Plaintiff's date of disability as June 1, 2012. Respondent notified Appellant that it accepted liability for Appellant's claim under the

Policy, but determined that Appellant was not totally disabled prior to December 10, 2012, the age-60 anniversary as set out in the Rider. Respondent fixed Appellant's disability date as May 1, 2013, because Appellant's condition did not "prevent him from performing the duties of his occupation as a General Surgeon . . . prior to his last date worked in the operating room." Based on a May 1, 2013, date of disability, Respondent issued benefits to Appellant under the Policy until the end of the Maximum Benefit period but did not issue any lifetime sickness benefits under the Rider.

Appellant filed an appeal with the Respondent pursuant to the terms of the Policy. Respondent denied his appeal citing that Appellant performed the "material and substantial duties of his occupation well after December 10, 2012" and thus "clearly [did] not satisfy" the Policy definition of total disability and was not entitled to lifetime sickness benefits under the Rider.

Appellant filed a petition against Respondent for breach of contract, alleging that Appellant was totally disabled under the policy prior to December 10, 2012, and entitled to lifetime sickness benefits under the Rider. The parties filed cross-motions for summary judgment. On March 23, 2023, the trial court entered orders and judgments overruling Appellant's Motion for Summary Judgment and sustaining Respondent's Motion for Summary Judgment.

Appellant appeals. We analyze his three points relied on out of order.

## Standard of Review

"This Court reviews a circuit court's grant of summary judgment *de novo*. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in

determining whether summary judgment was proper." ***Sachtleben v. Alliant Nat'l Title Ins. Co.***, 687 S.W.3d 624, 629 (Mo. banc 2024) (internal citations and quotation marks omitted).

> Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. The facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Only genuine disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.

***Bowden v. Am. Mod. Home Ins. Co.***, 658 S.W.3d 86, 91 (Mo.App. 2022).

While generally an order denying summary judgment is not appealable, there is a well-recognized exception when "the merits of that motion are intertwined with the propriety of an appealable order granting summary judgment to another party." ***Stone v. Crown Diversified Indus. Corp.***, 9 S.W.3d 659, 664 (Mo.App. 1999).

## Discussion

### Point 2

Appellant asserts in his second point that the trial court erred in concluding that he was not entitled to lifetime sickness benefits because the definition of "total disability" in the Policy is ambiguous and must be construed against Respondent. We disagree.

"When interpreting an insurance policy, this Court gives the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance." ***Seaton v. Shelter Mut. Ins. Co.***, 574 S.W.3d 245, 247 (Mo. banc 2019) (internal quotation marks omitted).

> The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent. We read the terms of a contract as a whole to determine the intention of the parties, and we give the terms their plain, ordinary, and usual meaning. Additionally, each term of a contract is construed to avoid rendering other terms meaningless. A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that

6

leaves some of the provisions without function or sense.

*Health Care Found. of Greater Kan. City v. HM Acquisition, LLC*, 507 S.W.3d 646, 656 (Mo.App. 2017) (internal citations and quotation marks omitted). "A policy must be enforced as written when its language is clear and unambiguous." *Seaton,* 574 S.W.3d at 247. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Shelter Mut. Ins. Co. v. Hill*, 688 S.W.3d 638, 645 (Mo.App. 2024) (internal quotation marks omitted). "The failure of a policy to define a term does not, in and of itself, render it ambiguous." *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 40 (Mo.App. 2007). "While ambiguity exists if the term is reasonably open to different constructions, an unreasonable alternative construction will not render the term ambiguous. Courts will not distort the language of an unambiguous insurance policy in order to create an ambiguity where none exists." *Wasson v. Shelter Mut. Ins. Co.*, 358 S.W.3d 113, 120 (Mo.App. 2011) (internal citations and quotation marks omitted).

The Policy defines "total disability" or "totally disabled" as "injury or sickness restricts your ability to perform the material and substantial duties of your regular occupation to an extent that prevents you from engaging in your regular occupation." Lifetime sickness benefits requires total disability and that such total disability "(a) is the result of sickness which began before the policy anniversary when your age was 60 and while this rider was in effect" and "(b) began before the policy anniversary when your age was 60 and has been continuous until the month for which this benefit is payable."

Appellant's first argument is that the first clause in the sentence defining "total disability"—"injury or sickness restricts your ability to perform the material and substantial duties of your regular occupation"—is ambiguous because it specifies neither how many "material and substantial duties" he has as a general surgeon, nor how many of those duties must

7

be restricted. Appellant correctly observes and relies on the principle that ambiguities are resolved in favor of the insured. *See **Seeck v. Geico Gen. Ins. Co.**,* 212 S.W.3d 129, 132 (Mo. banc 2007). Appellant, however, fails to explain how the aforementioned first clause, even if construed in his favor, would materially alter the underlying judgment. Ambiguity in the clause or not, Respondent does not appear to dispute that "injury or sickness restrict[ed] [Appellant's] ability to perform the material and substantial duties of [his] regular occupation" from June 2012 onward. And even if Respondent did dispute this, and the clause was construed in Appellant's favor, Appellant would still need to satisfy the second clause in the same sentence—"to an extent that prevents you from engaging in your regular occupation"—as well as satisfy the related Rider conditions for lifetime sickness benefit eligibility.

Thus, we turn to Appellant's next ambiguity argument which is directed at this second and controlling clause. Specifically, Appellant claims the word "prevents" as used in "to an extent that prevents you from engaging in your regular occupation" is ambiguous because it lacks "a temporal component," in that it fails to delineate whether "an act is restricted or prevented temporarily, transiently, or permanently."[1] This argument fails for the reason that it ignores the applicable provisions contained within in the Rider. To achieve lifetime sickness benefits, which is what Appellant asserts the trial court erred in failing to award him, the Rider requires that total disability "began before the policy anniversary when your age was 60 and has been continuous until the month for which this benefit is payable." Contrary to Appellant's argument otherwise, this language clearly and unambiguously sets out a "temporal component"—*continuous* total disability from one date (before the age-60 anniversary) to

---

[1] Appellant uses the same argument attacking the word "prevents" in the second clause to also attack the word "restricts" in the first clause. This argument fails for the same reasons already discussed in the preceding paragraph addressing the first clause.

8

another date (the month for which a benefit is payable).[2]

Appellant lastly argues that the Policy is ambiguous as shown by evidence that Respondent's "own employees cannot agree to its application." However, "[a]n insurance policy . . . is not ambiguous merely because the parties disagree over its meaning." *Trainwreck*, 235 S.W.3d at 40. Appellant simply fails with this argument (and all of the preceding arguments) to identify any material ambiguity in the text of the Policy. Accordingly, point 2 is without merit and is denied.

### *Point 1*

In his first point, Appellant contends the trial court erred in concluding that he was not entitled to lifetime sickness benefits because it misinterpreted the Policy in that Appellant's systemic contact dermatitis was a "sickness" that rendered him "totally disabled" prior to December 10, 2012. Again, we disagree.

Appellant argues that precedent indicates that "total disability" in Missouri means that the "infirmity renders the person unable to perform, *in the usual and customary way*, substantially all of the material acts of any occupation which his age, training, experience, education and physical condition would fit him for except for the infirmity." *Stout v. Central Nat. Life Ins. Co.*, 522 S.W.2d 124, 128-29 (Mo.App. 1975) (emphasis added). Yet "[t]he cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to *that* intent." *HM Acquisition, LLC*, 507 S.W.3d at 656 (internal quotation marks omitted) (emphasis added). The intent of the parties is ascertained by examining and interpreting the language of the specific contract or policy at issue.

---

[2] The undisputed material facts reveal that Appellant fails to meet this unambiguous requirement as shown in our analysis of point 1, *infra*.

Here, the Policy defines "residual disability" as a sickness which restricts the ability of the insured from performing their material and substantial duties "(a) for as long a time as you customarily performed them before the injury or sickness, or (b) as effectively as you customarily performed them before injury or sickness." This definition already contemplates that the insured cannot perform the duties of their occupation in the "usual and customary way." Appellant's proffered definition of "total disability" would indicate that an insured person is also "prevent[ed] from engaging in [their] regular occupation" when they cannot perform their duties in the "usual or customary way." To interpret "total disability" in this manner would render the definition of "residual disability" meaningless. "[E]ach term of a contract is construed to avoid rendering other terms meaningless. A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." *HM Acquisition, LLC*, 507 S.W.3d at 656 (internal citation and quotation marks omitted). Consequently, Appellant's proffered definition of "total disability" is inapplicable.

Appellant further argues that because he was periodically unable to perform surgeries when his condition would require him to take time off work to recover, he was "prevented from engaging in his regular occupation" under the Policy and was "totally disabled" prior to December 10, 2012, the age-60 Policy anniversary date for receiving lifetime sickness benefits under the Rider. However, although between June 2012 and April 2013, Appellant could not devote a minimum of forty hours per week to patient care in his surgery practice, the times when Appellant could not perform surgeries were unpredictable, but always temporary. Appellant performed numerous medical procedures and surgeries from June 2012 through December 2012. In addition, although Appellant periodically could not perform surgeries during outbreaks of his

10

condition, he could sometimes perform other duties of his occupation besides performing surgeries. Even after December 2012, he performed sixty-eight surgeries and other duties, continuing in his profession until May 2013, at which point he was advised his disability "no longer permits [him] to carry on as a general surgeon." From June 2012 to December 2012, Appellant was certainly restricted from performing the material and substantial duties of his regular occupation but was not "prevented" from engaging in his regular occupation.

In sum, Appellant has failed to demonstrate any error by the trial court in its determination that Appellant was not "totally disabled" under the Policy and not entitled to lifetime sickness benefits under the Rider. Point one is denied.

### *Point 3*

Finally, in his third point, Appellant argues the trial court erred in determining that there was no genuine dispute of material fact, and, thus, seeks remand back to the trial court for further proceedings. This argument, however, is contrary to Appellant's own brief, which leads off as follows:

> The summary judgment proceedings in the court below and this appeal present a single question regarding the application of UNUM's definition of total disability to Dr. Hall's practice in the months immediately preceding December 10, 2012. The question is narrow because the following facts are undisputed:
>
> • Dr. Hall purchased a Disability Income Policy from UNUM that included an additional Lifetime Sickness Benefit Rider,
>
> • Dr. Hall paid all premiums for the Policy and the Rider,
>
> • Dr. Hall's systemic contact dermatitis is a "sickness" as defined by the Policy,
>
> • Dr. Hall's "sickness" began prior to the policy anniversary when his age was 60 (December 10, 2012),
>
> • Dr. Hall's sickness began while the rider was in effect,
>
> • Dr. Hall's sickness rendered him "totally disabled" at least as early as May 1, 2013, and

11

• Dr. Hall was totally disabled from May 1, 2013, through the filing of his Petition on March 26, 2018.

Given the establishment of these facts, it is undisputed that Dr. Hall has a right to the payment of lifetime sickness benefits under the rider if his "total disability . . . began before the policy anniversary when [his] age was 60."

The ultimate question, therefore, is did Dr. Hall's "total disability" begin before December 10, 2012. This question is answered in the affirmative as a matter of law and **undisputed fact**.

(Original emphasis omitted, further emphasis added.)

Appellant attempts to avoid the inconsistency by denoting his argument in point 3 as an alternative argument, but yet does not direct our attention to a single dispute of material fact which would preclude judgment as a matter of law. The undisputed facts in the summary judgment record, identified and relied on by Appellant, include all the contractual provisions of the Policy and the Rider, the nature of Appellant's condition, the extent to which his condition affected his work schedule and the performance of his material and substantial duties, Appellant's eventual resignation from his place of work, and Respondent's denial of Appellant's disability insurance claim under the Rider. All these constitute facts "from which the right to judgment flows" and do not leave unresolved disputes of material fact for submission to a jury. *Bowden*, 658 S.W.3d at 91. The trial court's determination that there was no genuine dispute of material fact precluding judgment as a matter of law is not in error. As such, point three is denied.

## Decision

Having denied each of Appellant's points, the judgment of the trial court is affirmed.

BECKY J. WEST, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

12